IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| JACOB DOE,<br><br>    Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, FRANK SHUSHOK JR., KATIE POLIDORO, ENNIS McCRERY, KYLE ROSE, ROHSAAN SETTLE, KELLY OAKS and ANGELA SIMMONS, *employees of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,*<br><br>    Defendants. | Civil Action No.    7:19cv249 |

## COMPLAINT

Jacob Doe[1] files this Complaint against Defendants Virginia Polytechnic

Institute and State University, for gender-based discrimination in violation of Title

IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), violations of his

rights under the due process and equal protection requirements of the Fourteenth

---

[1] "Jacob Doe" is not the Plaintiff's real name. Due to the nature of the allegations in this lawsuit, Mr. Doe is proceeding under a pseudonym to protect his privacy and out of fear of retaliation, and to protect the identity of his accuser, he is identifying her as "Jenna Roe." In using a pseudonym, Doe relies upon the factors set out in *Co. Doe v. Pub. Citizen,* 749 F.3d 246 (4th Cir. 2014).

Case 7:19-cv-00249-EKD   Document 1   Filed 03/19/19   Page 1 of 23   Pageid#: 1

Amendment to the United States Constitution, Art. I, § 11 of the Virginia Constitution, breach of contract, and other state law causes of action. In support of this Complaint, Jacob Doe states as follows:

## THE PARTIES AND JURISDICTION

1.     Plaintiff Jacob Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of Virginia. Plaintiff was a Virginia Tech student from fall 2015 until spring 2018.

2.     Defendant Virginia Polytechnic Institute and State University (the "University" or "Virginia Tech") is a public university incorporated, and with its principal place of business located, in the Commonwealth of Virginia.

3.     Defendant Timothy Sands is or was at pertinent times the President of the University and resides in Virginia.

4.     Defendant Frank Shushok, Jr., Ph.D. is or was at pertinent times a Senior Assistant Vice President for the University and resides in Virginia.

5.     Defendant Katie Polidoro is or was at pertinent times Director of Title IX Compliance and Title IX Coordinator for the University and resides in Virginia.

6.     Defendant Ennis McCrery is or was at pertinent times the Associate Director of Student Conduct for the University and resides in Virginia.

7.     Defendant Kyle Rose is or was at pertinent times Student Conduct Coordinator for the University and resides in Virginia.

8.     Defendant Rohsaan Settle is or was at pertinent times the Director of Student Conduct for the University and resides in Virginia.

9. Defendant Kelly Oaks is or was at pertinent times the Assistant Vice President for Equity and Accessibility for the University and resides in Virginia.

10. Defendant Angela Simmons is or was at pertinent times the Assistant Vice President for Student Affairs for the University and resides in Virginia.

11. The Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the United States Constitution, brought pursuant to 42 U.S.C. § 1983, and under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88; and (ii) the state law and common law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

12. This Court has personal jurisdiction over Defendant Virginia Tech and the affiliated Defendants on the grounds that they are conducting business within the Commonwealth of Virginia.

13. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because Virginia Tech is located in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### 1. The Alleged Incident.

14. Doe enrolled as an undergraduate student at Virginia Tech and matriculated in the fall semester of 2015. Beginning at that time and continuing through the events giving rise to this action, Doe paid tuition to attend the University.

15.    Doe expected to graduate from the University in the spring of 2019.

16.    In early December 2017, Doe and his then girlfriend, Jenna Roe, engaged in a verbal altercation.

17.    As a result of the verbal altercation, Doe ended his long-term relationship with Roe and asked for the return of his belongings.

18.    Devastated by Doe's desire to end their relationship, Roe then called the police and falsely accused Doe of assault and battery, for allegedly tugging earbuds out of her ears during their verbal altercation, for trespassing while waiting for Roe to return his belongings before leaving her apartment, and for dropping off an apology letter to her.

19.    In January 2018, the Montgomery County Commonwealth Attorney dismissed both charges against Doe after learning from Doe's attorney, and from Roe's own testimony, that she herself had repeatedly physically assaulted Doe during the relationship and was therefore not a credible witness.

## 2.    The Investigation.

20.    Notwithstanding dismissal of the criminal charges, the University opened a Title IX investigation in response to the Roe's allegations against Doe.

21.    Doe received notice of the investigation via email on December 19, 2017. This notice did not include any information about the specific incidents, allegations, or possible charges being investigated.

22.     Katie Polidoro ("Polidoro"), Deputy Title IX Coordinator, performed the investigation. She met at least four times with Roe and interviewed at least three of her witnesses.

23.     In contrast, Polidoro initiated only one meeting in December 2017 and one follow-up meeting with Doe in January[2] 2018 and did not interview any of the witnesses he identified who could have provided information disputing Roe's claims.

24.     During the December 2017 meeting, Polidoro asked Doe very invasive and inappropriate questions, including an inquiry into the quality of his sex life, which did not have anything to do with what Doe understood to be the charges against him.

25.     Demonstrating a clear bias against Doe as the male accused, though Doe clearly reported to Polidoro during both the December 2017 and January 2018 interviews that he was a victim of domestic abuse by Roe and had promptly submitted via email in January a written account describing this, the University failed to initiate any Title IX investigation into Roe's actions at this time.

26.     The investigation concluded on March 8, 2018 without having interviewed any of Doe's witnesses, and without having addressed his allegations against Roe.[3]

_____

[2] Doe did meet with Polidoro on other occasions, however such meetings took place only upon initiation by Doe and solely concerned the impact the investigation was having on his academics and emotional state, rather than the investigation itself. Polidoro did not attempt to offer Doe the necessary accommodations for academic relief until nearly four months after the investigation had begun. Polidoro's emotional support for Doe amounted to writing the name of a counseling center on a Post-it note.
[3] Polidoro claimed that Doe's witnesses either did not want to participate, or never got back to her, both of which were provably false. In fact, Polidoro misled witness

27. On March 23, 2018, Doe was given a copy of Polidoro's Investigation Report, however the report still did not inform him of the exact allegations against him.

28. On March 28, 2018, Doe attended a pre-hearing meeting with Assistant Conduct Coordinator Maya Azar and was informed for the first time, after he had already been subjected to an interview, that he was facing seven different charges, including three relating to sexual assault.

29. Given he had not been notified of these specific charges at any time between December 20, 2017 when he received the notice of investigation, and March 28, 2018 when he attended the pre-hearing meeting, he was unable to provide a meaningful defense during the investigation process.

30. Moreover, despite the severity of the numerous charges brought against Doe, at no time did Virginia Tech impose an interim suspension against him, despite its authority to do pursuant to the Code.

31. Certainly, had Defendants genuinely perceived Doe to be a threat to either Roe to the community as a whole, they would not have permitted him to stay on campus, nor attend classes, for a full five months while the investigation was ongoing.

32. The hearing was scheduled for April 4, 2018, only one week after he first learned of the charges against him.

---

A.H., stating that he was being asked to be a witness against Doe, on Roe's behalf, and so he refused the meeting. Witness D.G. had to change the date of his initial meeting time, and Polidoro never followed up with a new date. Witness S.H. was never contacted during the first investigation.

33.    Doe's mother thereafter made several contacts with both Assistant Vice President of the Office for Equity and Accessibility Kelly Oaks ("Ms. Oaks") and Director of Student Conduct Rohsaan Settle ("Mr. Settle"), questioning why Doe's witnesses had not been interviewed, and why Roe's conduct had not been investigated.

34.    On March 30, 2018, four days prior to the scheduled hearing, Mr. Settle advised Doe's mother that the 8-page statement Doe gave to the Title IX office in January would not suffice as notification to the University that Doe had been abused by his girlfriend, even though Doe's statement described in detail being physically attacked by Roe (who holds a martial arts blackbelt) while he was sleeping, and being hit by her in front of his roommate.

35.    Rather than accepting Doe's previously submitted statement, Mr. Settle instructed Doe to prepare a formal complaint against Roe.

36.    On April 2, 2018, Doe filed his formal complaint against Roe and pushed to have the University's Title IX office investigate Roe for domestic abuse, as he had initially reported in his statements to Polidoro in December and January. As a result, Polidoro was finally forced to interview Doe's witnesses.

37.    On April 3, 2018 at 4:00 p.m., less than 24 hours before the scheduled hearing, Doe was notified that the hearing would be postponed.

38.    Thereafter, a superficial investigation into Doe's report was conducted, culminating in the issuance of an investigative report dated April 30, 2018.

### 3. The Decision and Sanctions.

39.     On May 21, 2018, the University held a hearing concerning Roe's allegations against Doe. Defendants Kyle Rose and Ennis McCrery, both members of the Student Conduct staff, acted as the "impartial" hearing officers.

40.     Prior to the hearing, Roe's attorney threatened Doe with citing a violation of the previously issued protective order if Doe attended the hearing. Upon being notified of this issue, Ms. Oaks carelessly and inappropriately suggested that the two parties simply not show up for the hearing, unconcerned with Doe's ability to meaningfully present a defense.

41.     In a decision letter dated May 23, 2018, McCrery and Rose erroneously found Doe responsible for domestic violence and imposed a 1.5-year suspension from the University, through the end of the Winter 2020 term, with eligibility for re-enrollment in the Spring 2020 semester. This 1.5-year suspension was in effect however, a full 2-year suspension given Doe's inability to begin courses in the spring that include prerequisites offered only in the fall semester.

42.     In addition, Doe was required to attend mandatory counseling sessions, schedule a mandatory mental health assessment and participate in various educational programs, including one on anger management.

43.     The decision relied heavily on the accounts of "multiple witnesses" who allegedly corroborated Roe's account; yet, it failed to note that none of Doe's witnesses were ever interviewed.

44. Also on May 21, 2018, the University held a simultaneous hearing concerning Doe's allegations against Roe. McCrery and Rose found Roe responsible for dating violence only, despite her own admission to having physically assaulted Doe on more than one occasion.

45. There was no rational explanation for the severely disproportionate sanctions issued to the parties in light of the nature of the allegations. While Doe was issued a 1.5-year suspension for alleged verbal altercations, Roe received a mere probation for engaging in physical violence against Doe, which she admitted.

46. Doe appealed the findings of responsibility on June 1, 2018. Pursuant to Virginia Tech's Title IX procedure, he appealed on several grounds including that the hearing officers were biased, the standard of proof used in the hearing was wrong, and that he did not receive proper notice of the allegations.

47. The appeal process at Virginia Tech has different procedures in Title IX cases than the process for other student conduct cases. In regular student conduct cases, only an accused student can appeal. In Title IX cases, both the accused and the accuser can appeal. Virginia Tech officials are more likely to carefully consider an appeal from a female appellant than a male appellant. In fact, it is very rare for the University to overturn findings of responsibility against male students accused of sexual misconduct, even when the evidence in favor of the male student is clear (as it was in this case).

48. Simmons disregarded the lack of sufficient notice provided to Doe on the grounds that Doe was notified of the charges prior to the hearing (but after he had

already been interviewed and an investigation report issued), new information Doe offered, and the bias exhibited throughout the investigation process.

49.    Further, Simmons entirely disregarded as "new information" evidence presented by Doe in his appeal which refuted Roe's allegations that he prevented her from spending time with family or friends.[4] Yet, this information could not reasonably be considered "new" information not properly presented at the appeal stage, when Doe did not learn until the hearing itself that such allegations were made against him.

50.    On June 18, 2018, Assistant Vice President for Student Affairs Angela Simmons denied his appeal, upholding the findings and sanctions.

51.    This constituted the final decision of the University.

### COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C § 1983 (AGAINST ALL DEFENDANTS)

52.    Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

53.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

---

[4] Doe outlined the various trips, get-togethers, and vacations, both in and out of the state that Doe and Roe attended with each other's families.

54. Virginia students at public post-secondary schools, like Virginia Tech, have a liberty and property interest in their educations, which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

55. Doe has a liberty interest in his good name, reputation, honor, and integrity which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

56. Because of Doe's various liberty and property interests protected by the Procedural Due Process Clause of the Fourteenth Amendment, Virginia Tech was obligated to provide him with a fundamentally fair and unbiased disciplinary process before punishing him for alleged misconduct.

57. At a minimum, Virginia Tech was required to afford him proper notice of the allegations against him and a meaningful opportunity to be heard and to defend himself, both of which it failed to do.

58. Defendants deprived Doe of proper notice of the charges against him when the December 19, 2017 notice of investigation failed to include any information about the specific incidents, allegations, or possible violations of the Student Conduct Code being investigated. It was not until March 28, 2018, well after the conclusion of the investigation, and over two months after Doe had been interviewed and provided a statement that he learned for the first time that seven different charges were alleged, including three allegations of sexual misconduct. As Doe was not notified of these charges until the investigation portion of the matter had closed, Doe was unable to adequately respond to the charges against him.

59.     Defendants deprived Doe of a meaningful opportunity to be heard when they failed to notify him of all allegations against him prior to requiring him to appear for an investigatory interview; while Polidoro interviewed at least three of Roe's witnesses, she failed to interview even one of Doe's; the delayed investigation process resulted in a hearing date of May 21, 2018, at which point Doe's witnesses were unable to appear due to study abroad programs and planned summer travel and jobs; Polidoro disregarded Doe's statements concerning the abusive conduct he was subjected to by Roe; and Polidoro disregarded exculpatory evidence including the dismissal of Roe's criminal charges and information collected from Doe's witnesses during the criminal proceeding that demonstrated Doe never engaged in the conduct alleged.

60.     The foregoing failures deprived Doe of his education for a minimum of 2 years and resulted in a permanent mark on his academic record, which will irreparably harm his future employment and educational opportunities.

61.     The notation of suspension on his student transcript will further severely limit his ability to find academic or career success. It will cause other educational institutions and many employers to reject him because of the wrongful disciplinary action.

62.     As a result of these due process violations, Doe was suspended and suffers ongoing harm to his reputation and numerous damages.  His delayed anticipated graduation date will result in lost future earnings and additional undergraduate expenses, and he will forever by marred by an erroneous record of suspension on his

transcript that will negatively affect future educational and employment opportunities.

63.    As a result of these erroneous findings, Doe has also sustained damages in the form of at least two years of lost earnings, a lease obligation from the 2018-2019 academic year, attorneys' fees, mental health counseling, the loss of an internship opportunity, and psychological and emotional damages.

WHEREFORE, plaintiff Jacob Doe prays judgment as hereinafter set forth.

## COUNT II – VIOLATION OF THE DUE PROCESS CLAUSE
## OF THE VIRGINIA CONSTITUTION
## (AGAINST ALL DEFENDANTS)

64.    Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

65.    The Virginia Constitution states that "no person shall be deprived of his life, liberty, or property interests without due process of law." Va. Const. art. I, § 11.

66.    For the reasons stated under Count I, the University deprived Doe of various liberty and property interests without due process of law.

67.    Accordingly, all Defendants are also liable to Doe for violations of the Virginia Constitution and the individual defendants are liable, in their personal capacities, for all damages arising out of those violations.

## COUNT III – VIOLATION OF TITLE IX (20 U.S.C. § 1681 *et seq.*)
## (AGAINST THE UNIVERSITY)

68.    Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

69.     Virginia Tech receives federal funding, including in the form of federal student loans given to students and is subject to the provisions of Title IX.

70.     Title IX prohibits gender discrimination in the educational setting.

71.     Virginia Tech erroneously found Doe responsible for domestic violence. Indeed, he is innocent of the allegations and in fact, was the victim of abuse by his accuser, Roe.

72.     While the evidence demonstrated, at most, that Doe engaged in normal verbal altercations with Roe on occasion, the evidence indisputably established that Roe physically assaulted Doe, which was observed by direct witnesses on more than one occasion. Additionally, the evidence demonstrated that Roe threatened Doe, manipulated him, and caused him continued mental anguish and apprehension through her threats to him and his property.

73.     In light of the available evidence, the resultant sanctions of a 1.5-year suspension against Doe in comparison to a probation against Roe can only be explained by a gender bias against Doe, unsupported presumptions about the credibility of the parties, and the failure to conduct a fair and thorough investigative process.

74.     Doe was presumed guilty from the moment the report was filed; the disparate treatment and sanctions applied to the parties were informed by archaic stereotypes about the roles of men and women in relationships and the presumption that Roe, as the female, could not be the aggressor.

Case 7:19-cv-00249-EKD   Document 1   Filed 03/19/19   Page 14 of 23   Pageid#: 14

75.     Moreover, the University ignored Doe's complaint concerning the physical abuse and verbal threats that he endured from Roe, until they were forced to address them. Even when they finally did investigate Doe's allegations, they failed to take such charges seriously, operating from the presumption that only the female complainant could be a victim.

76.     At no time did the investigator or hearing officers consider Roe's motivation for filing the complaint against Doe. In fact, had a thorough investigation been performed, the University would have discovered that Roe threatened Doe on multiple occasions, stating that "he would be sorry if he broke up with her" and that she would "make him sorry"/ "set fire to his truck" if he left her.

77.     Defendants demonstrated a bias against Doe as the male accused when they failed to provide Doe with the same victim rights and support as provided to Roe, when he expressed his desire to pursue domestic abuse charges against Roe.

78.     Specifically, Polidoro reached out to Roe to encourage her to file a Title IX complaint against Doe, met with Roe to discuss her rights and options under the Title IX process, met with Roe no less than four times in a six-week period to walk her through the reporting process, and generally acted as an advocate for Roe rather than an impartial administrator tasked with overseeing the Title IX process when she aided Roe in determining the multitude of possible charges she could bring against Doe under the Hokie Handbook. Evidently, Polidoro treated Roe with respect and also afforded her instant credibility as a female witness.

79.     In direct contrast, when Doe reported that he had been the victim of domestic abuse in his initial statement to Polidoro, he was offered only cursory assistance. Indeed, Polidoro failed to even include a comment about Roe's abuse of Doe in her conclusion of the Investigation Report.  Neither Polidoro nor the other members of the Title IX or student conduct office met with Doe to encourage him to file a Title IX complaint as they had done with Roe, did not meet with him to discuss his rights and options under the Title IX process, nor did they suggest any victim's services or offer to assist Doe in filing a report with campus police.

80.     Moreover, when Doe attempted to pursue domestic violence charges against Roe, Mr. Settle refused to allow him to use his previous statement to file the complaint, even though it is both University and Title IX policy that a complaint is to be investigated no matter the form in which it is delivered. Mr. Settle made it clear that Doe would instead have to re-live his memories of the domestic violence and make a second statement in order to file a complaint. Mr. Settle also advised that there would be no investigation if Doe did not file a formal complaint.

81.     In comparison, when Roe made her initial statement to Polidoro, Polidoro went out of her way to help Roe through the process and charge Doe with as many violations as she could plausibly assemble from Roe's statement.

82.     The University further demonstrated a bias against Doe as the male accused when it included evidence tending to inculpate Doe in the investigation reports, yet failed to include evidence exculpating him.

16

83. Specifically, Defendants included information related to the criminal matter including the protective order and police report in its final reports. Conversely, Doe was prevented from presenting evidence that supported both his defense and his allegations against Roe including, that the Commonwealth Attorney declined to bring a case against him, the University failed to speak with the Commonwealth Attorney ("CA"), and Roe and Doe both signed an Accord and Satisfaction after Roe admitted to the CA that she engaged in physical abuse against Doe.

84. Finally, while Doe received a no contact order prohibiting him from contacting Roe in light of her allegations, when Doe filed his domestic violence claim, no such no contact order was issued to Roe.

85. The foregoing demonstrates the clear disparate treatment afforded to the parties and decision making by the University that can only be attributed to a gender bias against male students accused of misconduct.

86. As both Roe and Doe were accused of misconduct, the manner in which the investigations were handled, and the ultimate outcomes and sanctions imposed, reveal a process that plainly favors female students over male students, not just one that favors complainants over respondents.

87. Moreover, Virginia Tech initiated its investigation in the shadow of (1) Office of Civil Rights ("OCR") investigations into how colleges and universities handle allegations of sexual assault; and (2) innumerable reports covered in the national media that suggest the pervasive nature of sexual assault committed by male students on college campuses throughout the nation. As a reaction to the scrutiny of

these OCR investigations and national stories, and in order to be perceived as aggressively addressing the perceptions that sexual assault against female students is rampant on college and university campuses, Virginia Tech treats male students accused of sexual misconduct by female students more aggressively than it otherwise would, and more aggressively than it would treat similar complaints made by male students against female students.

88. Virginia Tech has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female students.

89. The appeal process for Title IX cases disproportionately and negatively affects male students. Appeals from male students are almost certain to fail. The appeal process itself favors female students because complainants in Title IX cases (who are overwhelmingly female) are given the right to appeal adverse decisions, unlike complainants in non-Title IX cases, essentially subjecting male respondents to double jeopardy.

90. The University favors female complainants over male complainants. If a male makes a Title IX complaint against a female, University officials are more likely to ignore the complaint (as the University did in this case) and not even bring it forward to a hearing than if the complaint was brought by a similarly situated female.

91.     Here, the decision erroneously finding Doe responsible for the alleged sexual misconduct, and the disproportionate sanction assessed was motivated by a gender bias against male students.

WHEREFORE, plaintiff Jacob Doe prays judgment as hereinafter set forth.

## COUNT IV – BREACH OF CONTRACT
### (AGAINST THE UNIVERSITY)

92.     Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

93.     Doe paid the University sums of money for his education, and in return, the University contracted to provide Doe with access to its undergraduate degree program.

94.     Doe's enrollment in, and attendance of, classes at Virginia Tech created in Doe an expectation that he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and policies.

95.     Accordingly, an implied contractual relationship existed between Doe and the University, under which each party owes the other certain duties.

96.     Under the implied contract between Doe and Virginia Tech, Virginia Tech has a duty not to suspend or expel Doe for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith.

97.     The University breached these contractual obligations by suspending Doe for domestic violence through an investigative and adjudicative process that—in the

ways, and for the reasons, set out above—was arbitrary, capricious, malicious, discriminatory, and conducted in bad faith.

98.     As a direct and proximate result of this breach, an erroneous finding that Doe committed domestic violence has been made part of Doe's educational records, which may be released to educational institutions and employers to whom Doe applies, substantially limiting his ability to gain acceptance at other institutions or to secure future employment.

99.     Accordingly, Virginia Tech is liable to Doe for breach of contract and for all damages arising therefrom.

WHEREFORE, plaintiff Jacob Doe prays judgment as hereinafter set forth.

## COUNT V – BREACH OF DUTIES OWED UNDER THE LAW OF ASSOCIATION (AGAINST THE UNIVERSITY)

100.     Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

101.     In conducting its investigation and adjudication of Roe's complaint against Doe, and of Doe's complaint against Roe, Virginia Tech owed Doe a common law duty under the law of associations not to suspend him for domestic violence on a record that was devoid of evidence to support the charge.

102.     Acting through its agents, servants and/or employees, Virginia Tech breached this duty by finding Doe responsible for domestic violence based on erroneous factual findings and by ignoring evidence to the contrary.

103.     In conducting its investigation and adjudication of Roe's complaint against Doe, and Doe's complaint against Roe, Virginia Tech owed Doe a common law duty

under the law of associations to follow its policies and procedures - including the University's Title IX Policy and Hokie Handbook, which mandates that a complaint be investigated even if it appears in the form of an 8-page written statement.

104.     Acting through its agents, servants and/or employees, Virginia Tech breached this duty by failing to follow the Title IX Policy and Hokie Handbook in several material respects, including (1) failing to obtain certain relevant evidence when Polidoro chose to interview Roe's witnesses while not interviewing Doe's; (2) failing to consider exculpatory evidence including the Commonwealth's dismissal of Roe's charges; and (3) failing to treat the parties equally and with respect when it made decisions throughout the investigative process that demonstrated the University's bias against Doe as the male accused and male victim.

105.     As a direct and proximate result of Virginia Tech's breach of these duties, Doe's education was unnecessarily and wrongfully delayed by 2 years. Doe has endured emotional and psychological suffering, his academic records will reflect the erroneous finding that he committed domestic violence, and he will be hindered in his ability to gain acceptance to future educational institutions and secure employment in his field of choice.

106.     Accordingly, Virginia Tech is liable to Doe for its violations of duties owed under the law of associations, and for all damages arising out of such violations.

WHEREFORE, plaintiff Jacob Doe prays judgment as hereinafter set forth.

## COUNT VI – DECLARATORY JUDGMENT
## (AGAINST ALL DEFENDANTS)

107.    Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

108.    Virginia Tech violated Doe's due process rights when it deprived him of sufficient notice of the charges against him, conducted a biased investigation motivated by archaic assumptions about the roles of males and females in relationships, deprived Doe of a meaningful opportunity to be heard by failing to interview all relevant witnesses, and treated him differently from Roe throughout the investigation process.

WHEREFORE, plaintiff Jacob Doe prays that judgment be entered in his favor for:

(1) compensatory and punitive damages in an amount to be determined at trial;

(2) a permanent injunction (a) restraining Virginia Tech, and all those acting in concert with Virginia Tech, from continuing to enforce any punishment against him and from making any notation on his transcript or keeping any record relating to his disciplinary hearing in Doe's educational records, and (b) ordering that Virginia Tech rescind and expunge the sanctions entered against him by Virginia Tech;

(3) a declaration that (a) the University violated Doe's due process rights and its actions were motived purely by gender, and (b) Doe was unjustly sanctioned by Virginia Tech.

Case 7:19-cv-00249-EKD   Document 1   Filed 03/19/19   Page 22 of 23   Pageid#: 22

(4) costs, including attorneys' fees under Title IX and 42 U.S.C § 1988, and such

further relief as is just and equitable.

DATED: March 19, 2019

Respectfully submitted,


By:   /s/ Jesse R. Binnall
      Harvey & Binnall, PLLC
      Jesse R. Binnall
      717 King Street, Suite 300
      Alexandria, Virginia 22314
      Telephone: (703) 888-1943
      Facsimile: (703) 888-1930
      Email: jbinnall@harveybinnall.com

      Nesenoff & Miltenberg LLP
      Andrew T. Miltenberg
      Tara J. Davis
      363 Seventh Avenue, 5th Floor
      New York, NY 10001-3904
      Telephone: (212) 736-4500
      Facsimile: (212) 736-2260
      Email:  amiltenberg@nmllplaw.com
              tdavis@nmllplaw.com

      *Attorneys for Plaintiff*