IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| JACOB DOE,<br><br>    Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, *et al.*,<br><br>    Defendants. | Civil Action No. 7:19-cv-00249<br>Judge Elizabeth K. Dillon |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR
LEAVE TO PROCEED UNDER PSEUDONYM**

    This action arises from a false accusation of domestic violence that was brought against Plaintiff Jacob Doe ("Plaintiff" or "Doe") by a fellow Virginia Polytechnic Institute and State University (the "University" or "Virginia Tech") student, Doe's ex-girlfriend Jenna Roe ("Roe"). Doe challenges the University's findings and his resultant 1.5-year suspension because it failed to follow even the most basic due process requirements and conducted an investigation motivated by gender bias against Doe as a male student accused of misconduct. Plaintiff seeks to have the erroneous finding of responsibility erased from his educational records, his suspension reversed, and to be compensated for the harm that he has suffered. Moreover, Doe seeks to restore his good name, which has been tarnished by Virginia Tech's conduct.

1

In the current social climate, even an accusation of gender-related violence, including domestic violence, is sufficient to brand a man for life. Moreover, Doe is concerned about the possibility of acts of reprisal against him should the allegations be publicized. Therefore, Doe seeks to proceed under a pseudonym to protect both his and his accuser's identities. The facts of this case revolve around accusations of domestic violence and abuse within a sexual dating relationship, which is fundamentally a private matter.

## FACTS

Doe enrolled as an undergraduate student at Virginia Tech and matriculated in the fall semester of 2015. Beginning at that time and continuing through the events giving rise to this action, Doe paid tuition to attend the University. Compl. ¶ 14. Doe expected to graduate from the University in the spring of 2019. Compl. ¶ 15.

In early December 2017, Doe and his then girlfriend, Roe, engaged in a verbal altercation. Compl. ¶ 16. As a result of the verbal altercation, Doe ended his long-term relationship with Roe and asked for the return of his belongings. Compl. ¶ 17. Devastated by Doe's desire to end their relationship, Roe then called the police and falsely accused Doe of assault and battery for allegedly tugging earbuds out of her ears during their verbal altercation, trespassing while waiting for Roe to return his belongings before leaving her apartment, and dropping off an apology letter to her. Compl. ¶ 18. In January 2018, the Montgomery County Commonwealth Attorney dismissed both charges against Doe after learning from Doe's attorney, and from

Roe's own testimony, that she had repeatedly physically assaulted Doe during the relationship and was therefore not a credible witness. Compl. ¶ 19.

Notwithstanding dismissal of the criminal charges, the University opened a Title IX investigation in response to Roe's allegations against Doe. Compl. ¶ 20. Doe received notice of the investigation via email on December 19, 2017. This notice did not include any information about the specific incidents, allegations, or possible charges being investigated. Compl. ¶ 21. Katie Polidoro ("Polidoro"), Deputy Title IX Coordinator, performed the investigation. She met at least four times with Roe and interviewed at least three of her witnesses. Compl. ¶ 22. In contrast, Polidoro initiated only one meeting in December 2017, one follow-up meeting with Doe in January 2018, and failed to interview any of the witnesses he identified who could have provided information disputing Roe's claims. Compl. ¶ 23.

During the December 2017 meeting, Polidoro asked Doe very invasive and inappropriate questions, including an inquiry into the quality of his sex life, which did not have anything to do with what Doe understood to be the charges against him. Compl. ¶ 24. Demonstrating a clear bias against Doe as the male accused, though Doe clearly reported to Polidoro that he was a victim of domestic abuse by Roe, and promptly submitted via email in January 2018 a written account describing this, the University failed to initiate any Title IX investigation into Roe's actions at this time. Compl. ¶ 25.

The investigation concluded on March 8, 2018 without having interviewed any of Doe's witnesses, and without having addressed his allegations against Roe.[1] Compl. ¶ 26. On March 23, 2018, Doe received a copy of Polidoro's Investigation Report. Compl. ¶ 27. On March 28, 2018, Doe attended a pre-hearing meeting with Assistant Conduct Coordinator Maya Azar and was informed for the first time, after he had already been subjected to an interview, that he was facing seven different charges, including three relating to sexual assault. Compl. ¶ 28. While the investigation was ongoing for five months, at no time did the University impose an interim suspension on Doe. Compl. ¶ 30.

The hearing was scheduled for April 4, 2018, only one week after he first learned of the charges against him. Compl. ¶ 32. Doe's mother thereafter made several contacts with both Assistant Vice President of the Office for Equity and Accessibility Kelly Oaks ("Oaks") and Director of Student Conduct Rohsaan Settle ("Settle"), questioning why Doe's witnesses had not been interviewed, and why Roe's conduct had not been investigated. Compl. ¶ 33.

On March 30, 2018, four days prior to the scheduled hearing, Settle advised Doe's mother that the eight-page statement Doe gave to the Title IX office in January would not suffice as notification to the University that Doe had been abused by his

---

[1] Polidoro claimed that Doe's witnesses either did not want to participate, or never got back to her, both of which were provably false. In fact, Polidoro misled witness A.H., stating that he was being asked to be a witness against Doe, on Roe's behalf, and so he refused the meeting. Witness D.G. had to change the date of his initial meeting time, and Polidoro never followed up with a new date. Witness S.H. was never contacted during the first investigation.

4

girlfriend, even though Doe's statement described in detail being physically attacked by Roe (who holds a martial arts blackbelt) while he was asleep, and being hit by her in front of his roommate. Compl. ¶ 34. Rather than accepting Doe's previously submitted statement, Settle instructed Doe to prepare a formal complaint against Roe. Compl. ¶ 35.

Accordingly, on April 2, 2018, Doe filed his formal complaint against Roe and pushed to have the University's Title IX office investigate Roe for domestic abuse, as he had initially reported in his statements to Polidoro in December 2017 and January 2018. As a result, Polidoro was finally forced to interview Doe's witnesses. Compl. ¶ 36. On April 3, 2018 at 4:00 p.m., less than 24 hours before the scheduled hearing, Doe was notified that the hearing would be postponed. Compl. ¶ 37. Thereafter, a careless investigation into Doe's report was conducted, culminating in the issuance of an investigative report dated April 30, 2018. Compl. ¶ 38.

On May 21, 2018, the University held a hearing concerning Roe's allegations against Doe. Defendants Kyle Rose and Ennis McCrery, both members of the Student Conduct staff, acted as the "impartial" hearing officers. Compl. ¶ 39. Prior to the hearing, Roe's attorney threatened Doe with citing a violation of the previously issued protective order if Doe attended the hearing. Upon notification of this issue, Oaks inappropriately suggested that the two parties simply not show up for the hearing, unconcerned with Doe's ability to meaningfully present a defense. Compl. ¶ 40.

In the decision letter dated May 23, 2018, McCrery and Rose erroneously found Doe responsible for domestic violence and imposed a 1.5-year suspension from the

5

University, through the end of the Winter 2020 term, with eligibility for re-enrollment in the Spring 2020 semester. This 1.5-year suspension effectively imposed a full 2-year suspension given Doe's inability to begin courses in the spring that mandated prerequisites offered only in the fall semester. Compl. ¶ 41. In addition, Doe was required to attend mandatory counseling sessions, schedule a mandatory mental health assessment, and participate in various educational programs, including one on anger management. Compl. ¶ 42. The decision relied heavily on the accounts of "multiple witnesses" who allegedly corroborated Roe's account; yet, it failed to note that none of Doe's witnesses were ever interviewed. Compl. ¶ 43.

Also on May 21, 2018, the University held a simultaneous hearing concerning Doe's allegations against Roe. McCrery and Rose found Roe responsible for dating violence only, despite her own admission to having physically assaulted Doe on more than one occasion. Compl. ¶ 44. While Doe was issued a 1.5-year suspension for alleged verbal altercations, Roe received a mere probation for engaging in physical violence against Doe, which she admitted. Compl. ¶ 45.

Doe appealed the findings of responsibility on June 1, 2018. Pursuant to Virginia Tech's Title IX procedure, he appealed on several grounds including that the hearing officers were biased, the standard of proof used in the hearing was wrong, and that he did not receive proper notice of the allegations. Compl. ¶ 46. On June 18, 2018, Assistant Vice President for Student Affairs Angela Simmons denied his appeal, upholding the findings and sanctions. Compl. ¶ 50. This constituted the final decision of the University. Compl. ¶ 51.

## ARGUMENT

While the Federal Rules of Civil Procedure require that the complaint "include the names of all the parties," and that an action be prosecuted "in the name of the real party in interest," the decision whether to allow a plaintiff to proceed anonymously is within the discretion of the trial court. Fed. R. Civ. P. 10(a), 17(a)(1); *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The Fourth Circuit has recognized that in "appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *James v. Jacobson*, 6 F.3d at 238.

Thus, many courts, including those in the Fourth Circuit, have held under similar circumstances that a party may proceed anonymously. *Doe v. Virginia Polytechnic Inst. & State Univ.*, 2018 WL 5929647 (W.D. Va. Nov. 13, 2018); *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 592-94 (E.D. Va. 2016) (allowing plaintiff accused of sexual assault to proceed under pseudonym); *Painter v. Doe*, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016) (stating that allegations of sexual misconduct are sufficiently sensitive and personal to support proceeding under a pseudonym); *Doe v. Alger*, 317 F.R.D. 37 (W.D. Va. 2016) (allowing the alleged perpetrator and victim of sexual assault to proceed under fictitious names; *Doe v. Univ. of Denver,* 2018 WL 1304530 (D. Colo. Mar. 13, 2018); *Doe v. Brown Univ.,* 210

F. Supp. 3d 310 (D.R.I. 2016); *Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016); *Doe v. Univ. of the South,* 687 F. Supp. 2d 744 (E.D. Tenn. 2009); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561 (D. Mass. 2016); *Doe v. Salisbury Univ.,* 2015 WL 3478134 (D. Md. 2015); *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017); *Doe v. Univ. of Montana*, 2012 WL 2416481 (D. Mont. 2012) ("With respect to the individual students involved in the Student Conduct Code proceeding, as well as the witnesses and University Court members involved in that proceeding, the Court finds that the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names," *citing Does I–XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068–69 (9th Cir. 2000)).

This is so, because, as recognized by this Court last year, "[t]he crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue." *Doe v. Virginia Polytechnic Inst. & State Univ.,* 2018 WL 5929647, at *2 (W.D. Va. Nov. 13, 2018) (internal citations omitted).

The Fourth Circuit set out a non-exhaustive five-part test to consider when a plaintiff requests to proceed under a pseudonym. *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). The factors to be considered are: (1) whether the requesting party seeks to preserve his privacy in a sensitive and highly personal matter; (2) whether

8

there is a risk of retaliatory physical or mental harm to a party or other non-party due to the identification; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and (5) whether there is a risk of unfairness to the opposing party in granting the motion. *Id.* (citations omitted).

### I. Allegations of Sexual Assault Are a Highly Personal and Sensitive Matter

The underlying facts in this case relate to alleged misconduct on the part of both parties in a prior dating relationship. Ultimately, Doe was erroneously found responsible for domestic violence, while Roe was found responsible for dating violence. Doe, and presumably Roe as both a complainant and respondent, therefore, seeks to minimize the harm of Virginia Tech's wrongful determination that he engaged in any violent behavior, and to prevent further harm. Requiring Doe, and indeed Roe, to proceed under their real names would cause the precise harm that he seeks to avoid.

In light of the nature of this case, private and intimate details regarding the lives of both Doe and Roe are likely to be at issue. Moreover, the reason for bringing the lawsuit is to restore Doe's good name. Even if Virginia Tech's actions are found to be unconstitutional, the harm would already be done, if he is required to disclose his identity through this litigation. Doe's name will forever be publicly associated with allegations of gender-based misconduct, specifically, domestic violence. For these reasons, courts have routinely found that in cases involving allegations of this

nature, the parties should be allowed to proceed under pseudonym. *See George Mason Univ.*, 179 F. Supp. 3d at 592-94; *Painter v. Doe*, 2016 WL 3766466, at *6.

Since the interests at play here are of a highly sensitive and private nature, this factor weighs heavily in favor of anonymity. Doe is seeking in this litigation to have his good name restored. If his name is public, then he cannot be made whole because this sensitive and prejudicial information will be published in the public arena. The damage will have been done.

## II. The Identification of Doe and Roe Poses Potential Retaliatory Physical and Mental Harm

Doe could be targeted for retaliatory physical or mental harm based solely on the accusation that he committed domestic violence. *George Mason Univ.*, 179 F. Supp. 3d at 593. Moreover, Virginia Tech affords anonymity to both accusers and accused during the disciplinary proceedings.[2] There is no reason to lift this veil of anonymity now simply because Virginia Tech erred and forced Doe to resort to federal litigation to clear his name.

Under the current social climate, there is no doubt that accusations of sexual misconduct, including domestic violence, are sufficient to tarnish a reputation. It does not matter that the accused has not been convicted of a crime. In this instance, Virginia Tech found Doe responsible, and even if this Court finds that Doe was not afforded due process, that does not change the damage done. Should Doe return to

---

[2] The Family Education Rights and Privacy Act ("FERPA") prevents institutions that receive federal funding from releasing student's educational records without consent. 20 U.S.C. § 1232g(b)(1).

10

Virginia Tech to finish his education, that reputation would precede him. Having to live with this public reputation would be detrimental to Doe's physical and mental health.

Moreover, it would be harmful to Roe, the alleged victim, to publicize her name. Therefore, this factor weighs in favor of anonymity.

### III. Doe and Roe Are Both Young

Doe and Roe were both in their third year of college at the time of the alleged misconduct. While they are young adults, some courts have stated that being over eighteen should not be held against a college student seeking anonymity. *Yacovelli v. Moeser*, 2004 U.S. Dist. LEXIS 9152, *24 (M.D.N.C. May 20, 2004). While this factor does not weigh towards providing anonymity, it does not weigh against it either.

### IV. The Lawsuit Is Against Both Government and Private Parties

When a plaintiff challenges the government, courts are more likely to allow him or her to proceed under a pseudonym than in cases involving private parties, since actions against private individuals may harm their reputations. *Painter v. Doe*, 2016 WL 3766466, at *6 (W.D.N.C. July 13, 2016). Here, Virginia Tech and several of its employees are named defendants; the private parties engaged in all work for the governmental entity and are being sued in their official and individual capacities. Because the Defendants are government employees, there is much less concern than there would be with merely private individuals.

There is also a public interest in state activity, including activity that violates constitutional principles. That interest is advanced not only by this litigation

11

proceeding, but also by protecting the identities of Doe and Roe. The only information that the public needs regarding Doe and Roe is that they were both students at Virginia Tech. There is no public interest in learning the identities of Doe and Roe; it is sufficient that the underlying facts and legal claims are public. Therefore, this factor is neutral, at worst, and at best, favors proceeding under a pseudonym.

## V. There Is No Risk of Unfairness to Defendants

Allowing Doe to proceed under a pseudonym will not inhibit the Defendants from defending themselves against Doe's allegations. Defendants are aware of Doe and Roe's identities, as counsel previously served a Demand Letter, dated January 14, 2019, in which Plaintiff was identified by name, and in which the undersigned notified counsel for Defendants that it intended to file suit if the matter could not be resolved. Therefore, permitting Doe and Roe to remain anonymous will not result in any prejudice to Defendants. This factor also weighs against revealing Doe and Roe's identities to the public.

## CONCLUSION

The Court should allow Doe and Roe to proceed under pseudonyms because of the private nature of the issues before the Court. There is no unfairness to Defendants. Therefore, Jacob Doe requests that he be allowed to proceed under a pseudonym for the duration of this litigation.

DATED: June 26, 2019

                              Respectfully submitted,

By: <u>/s/ Jesse R. Binnall</u>
     Harvey & Binnall, PLLC
     Jesse R. Binnall
     717 King Street, Suite 300
     Alexandria, Virginia 22314
     Telephone: (703) 888-1943
     Facsimile: (703) 888-1930
     Email: jbinnall@harveybinnall.com

     Nesenoff & Miltenberg LLP
     Andrew T. Miltenberg
     Tara J. Davis
     363 Seventh Avenue, 5th Floor
     New York, NY 10001-3904
     Telephone: (212) 736-4500
     Facsimile: (212) 736-2260
     Email: amiltenberg@nmllplaw.com
            tdavis@nmllplaw.com

     *Admitted Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2019, I filed the foregoing using the Clerk's CM/ECF system, which will provide notice to all counsel of record.

/s/ Tara J. Davis
Nesenoff & Miltenberg LLP
Andrew T. Miltenberg
Tara J. Davis
363 Seventh Avenue, 5th Floor
New York, NY 10001-3904
Telephone: (212) 736-4500
Facsimile: (212) 736-2260
Email:  amiltenberg@nmllplaw.com
             tdavis@nmllplaw.com
*Admitted Pro hac vice*