IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JACOB DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-00249 |
| ) | |
| VIRGINIA POLYTECHNIC INSTITUTE ) | By: Elizabeth K. Dillon |
| AND STATE UNIVERSITY, *et al.*, ) | United States District Judge |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff moves for leave to proceed under the pseudonym "Jacob Doe." For the following reasons, the court holds that his privacy interest outweighs the presumption of openness in judicial proceedings. It will thus grant the motion.

I. BACKGROUND

Plaintiff filed his complaint, under the pseudonym Jacob Doe, against defendants Virginia Polytechnic Institute and State University (Virginia Tech), Timothy Sands, Frank Shushok, Jr., Katie Polidoro, Ennis McCrery, Kyle Rose, Rohsaan Settle, Kelly Oaks, and Angela Simmons. All of the individual defendants were or are employed by Virginia Tech.[1] (Compl. ¶¶ 3–10, Dkt. No. 1.)

Doe alleges that he was falsely accused of assaulting and battering "Jenna Roe" while enrolled as an undergraduate at Virginia Tech. According to Doe, he and Roe engaged in a

---

[1] As alleged in plaintiff's complaint, the individual defendants held or currently hold the following positions at Virginia Tech: Sands is the President, Shushok is a Senior Assistant Vice President, Polidoro is Director of Title IX Compliance and Title IX Coordinator, McCrery is Associate Director of Student Conduct, Rose is Student Conduct Coordinator, Settle is Director of Student Conduct, Oaks is Assistant Vice President for Equity and Accessibility, and Simmons is Assistant Vice President for Student Affairs. (Compl. ¶¶ 3–10, Dkt. No. 1.)

verbal altercation in December 2017 after which Doe ended their relationship. Roe then accused Doe of assault and battery for pulling earbuds out of Roe's ears during the altercation. She also accused Doe of trespassing because he waited for Roe to return his belongings before leaving her apartment and because he dropped off an apology letter to her. The Montgomery County Commonwealth Attorney dismissed the charges against Doe based in part on information that Roe "had repeatedly physically assaulted Doe during the relationship and was therefore not a credible witness." (Compl. ¶¶ 16–19, Dkt. No. 1.)

Virginia Tech then initiated an investigation into the incident, led by Polidoro. (*Id.* ¶¶ 20–22.) Doe faced seven different charges, including three "relating to sexual assault." (*Id.* ¶ 28.) On May 21, 2018, Virginia Tech held a hearing concerning Roe's allegations against Doe in which Rose and McCrery served as hearing officers. Doe was ultimately found responsible for domestic violence. (*Id.* ¶¶ 39, 41.)

In April 2018, Doe also filed a formal complaint against Roe for domestic abuse. Doe alleges that Virginia Tech opened a "superficial" investigation into his report. (*Id.* ¶¶ 36, 38.) On the same day as Doe's hearing, Virginia Tech held a hearing on Doe's allegations against Roe in which Rose and McCrery again served as hearing officers. Roe was found responsible for "dating violence" and received probation. (*Id.* ¶¶ 44–45.)

Doe thereafter appealed the finding against him "on several grounds including that the hearing officers were biased, the standard of proof used in the hearing was wrong, and that he did not receive proper notice of the allegations." (*Id.* ¶ 46.) His appeal was denied, and Virginia Tech imposed a 1.5-year suspension along with requirements that Doe participate in "mandatory counseling sessions, schedule a mandatory mental health assessment and participate in various educational programs, including one on anger management." (*Id.* ¶¶ 41–42, 50.)

2

Doe alleges violations of his due process rights under the United States and Virginia Constitutions, violation of Title IX, breach of contract, and breach of duties owed under Virginia's law of associations. He further seeks a declaratory judgment that Virginia Tech violated his due process rights and sanctioned him unjustly. (*Id.* at 10–22.)

Doe filed his complaint under the pseudonym "Jacob Doe," but he did not seek permission to proceed under a pseudonym. Defendants moved to dismiss the complaint under Rule 10(a) of the Federal Rules of Civil Procedure, seeking either "an Order staying the time to respond to the Complaint unless and until Plaintiff obtains leave to file under a pseudonym," or dismissal of the complaint for failure to obtain leave before filing under a pseudonym. (Mot. Dismiss 1, Dkt. No. 14.) In response, Doe filed an opposition to defendants' motion to dismiss and seeks leave to proceed under a pseudonym. (Pl.'s Opp'n to Mot. Dismiss, Dkt. No. 30; Pl.'s Mot. Leave, Dkt. No. 33.) He seeks to "proceed under a pseudonym to protect both his and his accuser's identities." (Pl.'s Mem. Supp. Mot. Leave 2, Dkt. No. 34.) Defendants filed a response to Doe's motion for leave, in which they argue that Doe's criminal charges "are already a matter of public record" and that "Roe provided testimony in regard to those charges," such that "the worst of any publicity or embarrassment has likely already passed." (Defs.' Resp. 2, Dkt. No. 38.)

## II.  DISCUSSION

Federal Rule of Civil Procedure 10(a) states: "[t]he title of the complaint must name all parties." The purpose of this rule "is to 'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'" *Doe v. Pittsylvania Cty.*, No. 4:11-cv-43, 2012 U.S. Dist. LEXIS 13618, at *3 (W.D. Va. Feb. 3, 2012) (quoting *Doe v. Hallock*, 119 F.R.D. 640, 643 n.1 (S.D. Miss. 1987)). However, parties

3

may proceed anonymously based on a number of exceptions to this requirement that have been articulated by courts. *Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 685 (11th Cir. 2001).

"The ultimate test for deciding if a plaintiff should proceed anonymously is whether plaintiff 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *2 (some internal quotation marks omitted) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)). This presumption of openness is well grounded in our nation's laws. *Id.* at *3. "Courts have long held that the First Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be 'open to the public absent an overriding and clearly articulated interest to the contrary.'" *Id.* (quoting *Doe 1 v. Merten*, 219 F.R.D. 387, 390–91 (E.D. Va. 2004)).

But the presumption of openness is not absolute; anonymity may be appropriate in some cases. "The crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously." *Id.* at *4. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue. *Id.* "[T]he only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing." *Id.* (alteration in original) (quoting *Doe v. Barrow Co.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003)). "Still, it is the exceptional case in which a court allows a party to proceed anonymously." *Id.*

Whether a plaintiff is allowed to proceed anonymously is a decision committed to the sound discretion of the district court. *Id.* at *6. To guide this decision, the Fourth Circuit has provided the following five factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Not all of these factors may be relevant to a given case, and there may be others that are. *Id.* Consequently, the trial court must "carefully review *all* the circumstances of [the] case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *7 (quoting *Frank*, 951 F.2d at 323).

The court concludes that the factors relevant to this case weigh in favor of anonymity.

**A.  Specific Sensitive and Personal Interest**

The first *James* factor asks whether the plaintiff's reason for anonymity is due to a specific sensitive and personal privacy interest or whether it is merely to avoid the annoyance and criticism that comes with litigation. Doe highlights that "this case relate[s] to alleged misconduct on the part of both parties in a prior dating relationship." He contends that the domestic and dating violence allegations are likely to put "private and intimate details regarding the lives of both Doe and Roe" at issue. (Pl.'s Mem. Supp. Mot. Leave 9.) The court agrees; the litigation here is clearly "a matter of sensitive and highly personal nature" because Doe is an accused perpetrator of domestic violence. Like sexual misconduct, allegations of domestic violence or abusive dating relationships involve sensitive and highly personal facts that can invite harassment and ridicule. *James*, 6 F.3d at 238; *see Doe v. The Rector & Visitors of*

5

*George Mason Univ.*, 179 F. Supp. 3d 583, 593 (E.D. Va. 2016) ("There can be no doubt that the litigation here focuses on a matter of sensitive and highly personal nature. Plaintiff has been accused of sexual misconduct, the mere accusation of which, if disclosed, can invite harassment and ridicule.") (internal citations and quotation marks omitted).

Defendants cite to *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979), for the proposition that Doe's criminal charges and Roe's testimony about those charges have already put this matter in the public record. In *Lindsey*, the court noted that "Lindsey had already suffered the worst of the publicity and embarrassment by being a named defendant in a state criminal trial." *Id.* Unlike *Lindsey*, in which the plaintiff's criminal case proceeded through a jury trial, Doe's case was dismissed soon after he was charged and before it reached trial. He and Roe therefore faced limited public exposure despite the charges being in the public record. And to the extent Doe suffered any negative publicity or embarrassment, the dismissal of his charges vindicated him in the public's eyes. By contrast, at issue here is a confidential investigation and proceeding conducted by Virginia Tech in which—unlike his criminal case—Doe was found responsible. Thus, the circumstances at issue in the university's disciplinary process have not been publicly revealed. Moreover, while both the disciplinary action and the criminal charges may involve the same conduct by Doe, the result of the disciplinary hearing and the related sanctions remain confidential. Accordingly, the court agrees with Doe that regardless of his criminal charges, the first *James* factor weighs in favor of anonymity.

**B.  Retaliatory Physical or Mental Harm**

The second *James* factor analyzes whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or innocent non-parties. Here, Doe argues that he "could be targeted for retaliatory physical or mental harm based solely on the accusation that he

6

committed domestic violence," and that if he returned to Virginia Tech, his public reputation would precede him and be detrimental to his "physical and mental health." (Pl.'s Mem. Supp. Mot. Leave 10–11.) He also notes that "Virginia Tech affords anonymity to accusers and accused during disciplinary proceedings" and that "[t]here is no reason to lift this veil of anonymity now." (*Id.* at 10.) Last, Doe asserts that it would also be harmful to Roe if her name was publicized. (*Id.* at 11.)

The court thinks that Doe's identification may put him at risk for physical or mental harm by persons who know that he has been found responsible for domestic violence against Roe. Moreover, his identification has the potential to lead persons—especially those who are associated with Doe and Roe or know of Doe and Roe—to identify Roe as his accuser and identify other students who were involved in the investigative process. It is also likely that identification of Roe could result in her facing a risk of harm. *See Doe v. Alger*, 317 F.R.D. 37, 40 (W.D. Va. 2016). Therefore, this factor also weighs in favor of anonymity.

**C. Ages of Persons Whose Privacy Interests Are Sought to Be Protected**

As to the third *James* factor, the court finds that this factor weighs neither in favor of nor against anonymity. While Doe and Roe are adults, college students "may still possess the immaturity of adolescence," particularly in the first few years of their schooling. *Yacovelli v. Moser*, No. 1:02- cv-596, 2004 U.S. Dist. LEXIS 9152, at *24 (M.D.N.C. May 20, 2014). Here, the incident occurred midway through the first semester of his third year at school. At the time of the incident, Doe was no longer "in his earlier years of college" such that "he may have still possessed this adolescent immaturity," *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:18-cv-320, 2018 WL 5929645, at *3 (W.D. Va. Nov. 13, 2018), nor was he close to graduating such that "he no longer possessed the immaturity of adolescence," *Doe v. Va. Polytechnic Inst. &*

7

*State Univ.*, No. 7:18-cv-170, 2018 WL 5929647, at *3 (W.D. Va. Nov. 13, 2018). The court therefore finds that the third *James* factor weighs neither in favor of nor against anonymity.

### D. Action Against Government or Governmental Activity

Under the fourth *James* factor, the court considers the defendant's identity as the government or a private party. Courts are more likely to allow a plaintiff to proceed under a pseudonym when the plaintiff challenges the government or government activity. *Yacovelli*, 2004 U.S. Dist. LEXIS 9152, at *24–25. This is because "although the mere filing of a lawsuit against a private party may cause the defendant reputational and economic harm, such that fairness requires the identification of the plaintiffs, the government is not vulnerable to similar reputational harm, particularly in a case involving a challenge to the constitutional, statutory, or regulatory validity of government activity." *Int'l Refugee Assistance Project v. Trump*, No. TDC-17-0361, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017); *see also Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *10–11. Further, "[u]se of pseudonyms is more likely to be appropriate in cases challenging government activity because there is both 'arguably a public interest in a vindication of . . . rights' and a risk of stigmatization of the plaintiff, who often represents a minority interest." *Int'l Refugee Assistance Project*, 2017 WL 818255, at *3 (quoting *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003)).

In this case, Doe's action is against both the government and private parties. He notes that the private parties "are being sued in their official and individual capacities," and asserts that because they are government employees, "there is much less concern than there would be with merely private individuals." He also contends that there is a public interest in state activity that violates constitutional principles, and he believes this interest is advanced by preserving Doe's

8

and Roe's anonymity. (Pl.'s Mem. Supp. Mot. Leave 11–12.) As such, he believes "this factor is neutral, at worst, and at best, favors proceeding under a pseudonym." (*Id.* at 12.)

While Doe is challenging government activity and suing the private parties in their official capacities, his allegations also focus on the individual actions of the private parties. In another case, this court previously found that this factor did not weigh in favor of or against anonymity when the plaintiff brought an action against the president and vice president of a university in their official capacities and the allegation could be read either as an accusation against them individually, or "as an indictment of the University's disciplinary process itself and not of the persons involved in it." *Alger*, 317 F.R.D. at 41.

In contrast, here, Doe plainly states that he is suing the individual defendants in both their official and individual capacities, and specifically alleges that Polidoro "failed to interview even one of Doe's [witnesses]," "disregarded Doe's statements concerning the abusive conduct he was subjected to by Roe," and "disregarded exculpatory evidence including the dismissal of Roe's criminal charges and information collected from Doe's witnesses." (Compl. ¶ 59.) Unlike in *Alger*, Doe's allegations cannot be read as solely contesting Virginia Tech's disciplinary process itself, but must be read as also challenging the specific actions of the persons involved in that process. Therefore, this fourth *James* factor weighs against anonymity.

### E. Risk of Unfairness to Defendant

The fifth *James* factor examines the risk of unfairness to the defendants from allowing the plaintiff to proceed anonymously. Doe contends there is no risk because the defendants are aware of Doe's and Roe's identities and counsel has used their real names in their discussions related to this case. (Pl.'s Mem. Supp. Mot. Leave 12.) The court agrees and finds that this factor weighs in favor of anonymity.

\*     \*     \*

After giving consideration to all of the factors discussed above, the court concludes that Doe's privacy interest outweighs the presumption of openness in judicial proceedings and that he may thus proceed anonymously in this case. In order to effectuate the court's ruling, the court directs the parties to refer to plaintiff and his accuser as "Jacob Doe" and "Jenna Roe," respectively, in all further documents filed in the case. If a particular document cannot be redacted or altered to comply with this directive, the filing party may seek leave to file it under seal.

## III. CONCLUSION

For the foregoing reasons, the court will grant plaintiff's motion for leave to proceed under a pseudonym and deny defendants' motion to dismiss.

An appropriate order will follow.

Entered: March 18, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge