IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JACOB DOE,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:19-cv-00249 |
| | ) | |
| VIRGINIA POLYTECHNIC INSTITUTE | ) | By: Elizabeth K. Dillon |
| AND STATE UNIVERSITY, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Jacob Doe was a student at defendant Virginia Polytechnic Institute and State University (Virginia Tech) who alleges that he was wrongfully accused of domestic violence and was unfairly sanctioned by Virginia Tech. Doe has named as defendants Virginia Tech and individual employees of Virginia Tech who were involved in his disciplinary proceedings.[2] This matter is before the court on defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. For the reasons set forth below, the court will grant in part and deny in part defendants' motions.

---

[1] The court previously granted leave for Doe to proceed by pseudonym.

[2] As alleged Doe's complaint, the individual defendants held or currently hold the following positions at Virginia Tech: Timothy Sands is the President, Frank Shushok, Jr. is a Senior Assistant Vice President, Katie Polidoro is Director of Title IX Compliance and Title IX Coordinator, Ennis McCrery is Associate Director of Student Conduct, Kyle Rose is Student Conduct Coordinator, Rohsaan Settle is Director of Student Conduct, Kelly Oaks is Assistant Vice President for Equity and Accessibility, and Angela Simmons is Assistant Vice President for Student Affairs. (Compl. ¶¶ 3–10, Dkt. No. 1.)

1

I. BACKGROUND

**A. Charges and Sanctions Against Doe**

Doe alleges that he was falsely accused of assaulting and battering "Jenna Roe" while enrolled as an undergraduate at Virginia Tech. According to Doe, he and Roe engaged in a verbal altercation in December 2017 after which Doe ended their relationship. Roe then accused Doe of criminal assault and battery for pulling earbuds out of Roe's ears during the altercation. She also accused Doe of trespassing because he waited for Roe to return his belongings before leaving her apartment and because he dropped off an apology letter to her. The Montgomery County Commonwealth Attorney dismissed the charges against Doe based in part on information that Roe "had repeatedly physically assaulted Doe during the relationship and was therefore not a credible witness." (Compl. ¶¶ 16–19, Dkt. No. 1.)

Virginia Tech then initiated an investigation into the incident, led by defendant Polidoro. (*Id.* ¶¶ 20–22.) Doe faced seven different charges, including three "relating to sexual assault." (*Id.* ¶ 28.) However, the notice Doe received regarding the investigation contained no information about the specific incidents, allegations, or potential charges being investigated. (*Id.* ¶ 21.) Doe alleges that as part of her investigation into the allegations against Doe, Polidoro interviewed at least three of Roe's witnesses but did not interview any witnesses Doe identified. (*Id.* ¶¶ 22–23.)

Doe received Polidoro's investigation report on March 23, 2018, and was informed of the charges against him on March 28, 2018. (*Id.* ¶¶ 27–28.) His hearing was originally scheduled for April 4, 2018, but was postponed until May 21, 2018, after Doe's mother contacted Virginia Tech staff to voice her concerns about deficiencies in the investigation process. (*Id.* ¶¶ 32–33, 37.)

Prior to the hearing, Roe's attorney contacted Doe to threaten him with a violation of a protective order if he attended the hearing. After being informed of this threat, defendant Oaks suggested neither Doe nor Roe appear for the hearing. (*Id.* ¶ 40.)

On May 21, 2018, Virginia Tech held a hearing concerning Roe's allegations against Doe in which defendants Rose and McCrery served as hearing officers. Doe was ultimately found responsible for domestic violence. (*Id.* ¶¶ 39, 41.)

Doe thereafter appealed the finding against him "on several grounds including that the hearing officers were biased, the standard of proof used in the hearing was wrong, and that he did not receive proper notice of the allegations." (*Id.* ¶ 46.) His appeal was denied, and Virginia Tech imposed a 1.5-year suspension along with requirements that Doe participate in "mandatory counseling sessions, schedule a mandatory mental health assessment and participate in various educational programs, including one on anger management." (*Id.* ¶¶ 41–42, 50.)

**B. Doe's Complaint Against Roe**

During the investigation into Doe's charges, Doe reported twice to Polidoro that he had been a victim of domestic abuse by Roe and had submitted an e-mail describing Roe's alleged abuse. (*Id.* ¶ 25.) Although Doe provided an informal statement alleging that Roe, who holds a black belt, physically attacked Doe while he was sleeping and hit Doe in front of Doe's roommate, Virginia Tech failed to initiate an investigation. On March 30, 2018, defendant Settle explained that Doe's statement regarding Roe's domestic violence was insufficient to trigger an investigation and that Doe would need to file a formal complaint. (*Id.* ¶¶ 34–35.) In April 2018, Doe filed a formal complaint against Roe for domestic abuse. Doe alleges that Virginia Tech opened a "superficial" investigation into his report. As a part of the investigation, Doe alleges that "Polidoro was finally forced to interview Doe's witnesses." (*Id.* ¶¶ 36, 38.)

On the same day as Doe's hearing, Virginia Tech held a hearing on Doe's allegations against Roe in which Rose and McCrery again served as hearing officers. Roe was found responsible for "dating violence" and received probation. (*Id.* ¶¶ 44–45.)

Based on the disparities in Virginia Tech's investigations into his and Roe's complaints, and the differences in charges and sanctions resulting therefrom, Doe asserts that Virginia Tech's hearing process is biased against males. Accordingly, his complaint asserts the following claims: violations of his due process rights under the United States and Virginia Constitutions against Virginia Tech and the individual defendants in both their individual and official capacities (Counts One and Two); a violation of Title IX against Virginia Tech (Count Three); breach of contract and breach of duties owed under Virginia's law of associations against Virginia Tech (Counts Four and Five); and a declaratory judgment action against all defendants seeking a declaration that defendants violated his due process rights and sanctioned him unjustly (Count Six).

Defendants seek dismissal of all claims on various grounds. Specifically, they argue that the court lacks jurisdiction over claims against Virginia Tech and its officials pursuant to Eleventh Amendment sovereign immunity and that neither Virginia Tech nor its officials are "persons" subject to liability for Doe's due process claims asserted pursuant to 42 U.S.C. § 1983. They further argue that, regardless of whether the court has subject-matter jurisdiction, Doe has failed to state any claim for which relief may be granted.

II. DISCUSSION

## A. Standard of Review

### 1. Motions to Dismiss for Lack of Jurisdiction

In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

### 2. Motions to Dismiss for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint. *Sec'y of State for Defence v. Trimble*

5

*Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need not accept legal conclusions couched as facts or 'unwanted inferences, unreasonable conclusions, or arguments,'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## B. Motion to Dismiss for Lack of Jurisdiction

Defendants' motion to dismiss for lack of subject-matter jurisdiction is premised on a number of grounds. Specifically, defendants argue that neither Virginia Tech nor its officials and employees, in their official capacities, are "person[s]" for the purposes of § 1983 and that defendants are entitled to the protections of sovereign immunity provided by the Eleventh Amendment with regard to the § 1983 claim and state claims.[3]

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Supreme Court held that neither states nor state officials in their official capacities are persons subject to suit under § 1983. *Id.* at 71. *But see Cobb v. The Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 824 (W.D. Va. 1999) ("[T]he 11th Amendment does not prohibit the plaintiffs from suing the individual defendants in their personal capacities." (citing *Hafer v. Melo*, 502 U.S. 21, 27 (1991))). It noted the exception, however, that an official is nonetheless a "person" under § 1983 when sued for injunctive relief because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v.*

---

[3] Defendants concede, however, that acceptance of Title IX funding constitutes a waiver of Eleventh Amendment immunity as to claims asserted under Title IX. *Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999).

6

*Graham*, 473 U.S. 159, 167 n.14 (1985)); *see also Ex parte Young*, 209 U.S. 123 (1908). Doe appears to agree that he cannot recover monetary damages against Virginia Tech, or its official or employees in their official capacities, and the court will grant defendants' motion in this regard.

Defendants also assert that their entitlement to Eleventh Amendment sovereign immunity prevents this court from asserting jurisdiction over Doe's claims. *See Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) ("It is well established that the Eleventh Amendment bars suit in federal court by an individual citizen against a sovereign state of the Union. . . . Although not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is 'a block on the exercise of that jurisdiction.'" (quoting *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995))). And while they acknowledge that the *Ex parte Young* exception to sovereign immunity permits suits for prospective injunctive relief against state officials in their official capacities, defendants argue that Doe seeks only to rectify harm done in the past such that the exception does not apply. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

But in addition to money damages, Doe seeks to expunge and clear his academic record, among other injunctive relief, which courts have noted is a request for prospective relief. *See, e.g.*, *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (holding that the Eleventh Amendment did not bar the expunging of a record of sexual assault discipline from a university's files); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (explaining that a request to expunge a grade from an academic record is not barred by the Eleventh Amendment); *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1230 (D. Colo. 2014) ("[A] request to expunge an academic record is a request for prospective relief."). Thus, the court concludes that Doe's

claims for injunctive relief against the individual defendants in their official capacities fall within the *Ex parte Young* exception to the Eleventh Amendment and survive the Rule 12(b)(1) motion.

As for Doe's claims against Virginia Tech, this court has previously held that "Virginia Tech is designated by statute as a corporation under the control of the General Assembly, Va. Code Ann. § 23.1-2600 (2016), and as such its status is the same as any other state agency." *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18cv000189, 2018 WL 5018487, at *4 (W.D. Va. Oct. 15, 2018); *cf. Hartman v. Univ. of Md. at Baltimore*, No. ELH-10-2041, 2013 WL 6858854 (D. Md. Dec. 20, 2013) (holding that the *Ex parte Young* exception did not apply because plaintiff did not sue individual officers, but rather the university itself); *Collin v. Rector & Bd. of Visitors of the Univ. of Va.*, 873 F. Supp. 1008 (W.D. Va. 2005) (finding that the University of Virginia is a state agency entitled to complete immunity). Notably, the *Ex parte Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146. Accordingly, the court will grant defendants' motion to dismiss pursuant to Rule 12(b)(1) as to Virginia Tech.

## C. Motion to Dismiss for Failure to State a Claim[4]

Defendants have also filed a motion to dismiss for failure to state a claim. With regard to Doe's due process claims, the court must consider whether Doe has sufficiently stated a claim against the individual defendants. Defendants argue that Doe has failed to allege a recognized liberty or property interest and, regardless, he received all the notice he was due. Defendants

---

[4] Because the court finds that Virginia Tech is entitled to sovereign immunity on all claims except Doe's Title IX claim in Count Three, it need not address whether Doe has stated a claim for breach of contract or violation of Virginia's law of associations, which were asserted only against Virginia Tech. Those counts will be dismissed without prejudice for a lack of subject-matter jurisdiction.

8

further argue that they are entitled to qualified immunity and that Doe has failed to allege sufficient facts against certain of the individual defendants such that the claims against those defendants should be dismissed. As to Doe's Title IX claim, defendants assert that Doe has not alleged facts establishing that the outcome of Doe's hearing was motivated by gender bias. For the reasons that follow, the court will grant defendants' motion as to Doe's due process claims and deny the motion as to Doe's Title IX claim.

### 1. Due Process Claims[5]

Doe asserts that Virginia Tech and its officials and employees violated his due process rights under the Fourteenth Amendment and the Virginia Constitution, and seeks to hold defendants liable pursuant to § 1983. To prevail on a due process claim, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012).

Thus, in order to be entitled to constitutional due process, Doe must first allege facts sufficient to establish either a protected property interest or liberty interest. The court has previously held that a public university student does not have a protected liberty interest in his continuing education. *Doe v. Alger*, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016); *see also Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 499 (W.D. Va. 2019) [hereinafter *Doe v. Virginia Tech*]. The court continues to believe that its analysis in *Alger*—and its application of *Alger* to the similar case of *Doe v. Virginia Tech*—was correct, and Doe

---

[5] The parties agree that Doe's due process claim in Count Two pursuant to the Virginia Constitution is co-extensive with his claim in Count One under the Fourteenth Amendment. "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both." *Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (Va. 2005).

has not provided any authority that convinces the court it should reach a different conclusion here. Accordingly, for the same reasons set forth in *Alger*, the court concludes that Doe has not alleged a protected liberty interest.

On the other hand, in *Alger*, the court found that the plaintiff had properly set forth facts alleging a protected property interest. As the court explained, the constitution cannot be the source of a protected property right; instead, there must be "a legitimate claim of entitlement to" the benefit in which the plaintiff alleges a property right. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). This claim of entitlement may arise from state statutes, contracts, regulations, or policies. *Id.* at 576–78. Doe does not allege that he has a right arising from a state statute or a regulation. Thus, to survive defendants' motion, his complaint must instead adequately allege a contract or policy that created a "claim of entitlement" to his continuing education.

As the court explained in *Alger*:

> The Supreme Court's decision in *Perry v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L.Ed.2d 570 (1972), is instructive on this issue, since rules and understandings were asserted as the basis for a property interest there. In *Perry*, decided the same day as *Roth*, the Court addressed whether a public junior college professor had a property right in continued employment where no state statute existed to provide that right and his contract did not contain such a right. *Id.* at 599, 92 S. Ct. 2694. The Court held that the lack of a statute and a contract provision did not necessarily mean there was no property right. There, the professor's allegation that a de facto tenure policy existed arising from rules and understandings officially promulgated and fostered by the college could be sufficient to state a property interest. *Id.* at 599–600, 92 S. Ct. 2694. While noting that "mere subjective 'expectancy'" is not protected by due process, the Court nonetheless held that the professor "must be given an opportunity to prove the legitimacy of his claim of entitlement in light of the policies and practices of the institution." *Id.* at 603, 92 S. Ct. 2694 (internal quotation marks and citation omitted). This same rule has been applied in other

> contexts as well. *See, e.g.*, *Richardson v. Town of Eastover*, 922 F.2d 1152, 1157–58 (4th Cir. 1991) (noting that "mutual expectations may create an entitlement in a license," especially where the license is renewable periodically simply on the payment of a fee and without additional action).

175 F. Supp. 3d at 657–58.

In *Alger*, the court denied a motion to dismiss where the plaintiff alleged that his university had a "system of expelling, suspending, or dismissing students only after a finding of cause" and pointed to a student's rights policy indicating as much. *Id.* at 658. As in *Perry*, the court in *Alger* did not hold at any time that Doe had "any legitimate claim of entitlement to [continued enrollment]," but it gave him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution." *Id.* (alteration in original) (quoting *Perry*, 408 U.S. at 602 n.7, 603).

Doe does not allege that Virginia Tech employed a similar policy. Rather, Doe relies on conclusory allegations that he has a liberty and property interest. (Compl. ¶¶ 54–55.) The court considered similar allegations in *Doe v. Virginia Tech* before finding that the plaintiff's allegations were insufficient to survive a motion to dismiss. The court stated, "here, even those sparse allegations present in *Alger* are missing. Nowhere does Doe allege that Virginia Tech only expels or suspends students for cause or point to other facts supporting a 'legitimate claim of entitlement.'" 400 F. Supp. 3d at 500. Likewise, Doe's conclusory allegations in this case are insufficient to assert a protected property interest based on Virginia Tech's policies or procedures.

Doe also asserts that he has a contractual property right in his continuing education because his payment of tuition created an implied contract between him and Virginia Tech. He asserts that his "enrollment in, and attendance of, classes at Virginia Tech created in Doe an

11

expectation that he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and policies." (Compl. ¶ 94.) According to Doe, one of the terms of the implied contract is that Virginia Tech had the "duty not to suspend or expel Doe for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith." (*Id.* ¶ 96.)

But in *Washington & Lee*, this court acknowledged the "dearth of authority" from Virginia courts "holding an implied contract is created through payment of tuition." *Doe v. Washington & Lee Univ.*, No. 6:19-cv-00023, 2020 WL 618836, at *8 (W.D. Va. Feb. 10, 2020); *see also Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018). Finding no support for the existence of an implied contract, the court noted that "accepting Plaintiff's argument here would 'impermissibly expand Virginia law without any input from Virginia's highest court.'" *Id.* (quoting *Marymount Univ.*, 297 F. Supp. 3d at 588). The court joined the Eastern District of Virginia in declining to recognize an implied contract between a student and his university arising simply out of the payment of tuition. Doe has not identified any contrary authority suggesting that Virginia law would recognize such a contract.

The court finds the reasoning of *Washington & Lee* and *Marymount* persuasive and further finds that Doe has not alleged a property interest based in contract.[6] Accordingly, the court will dismiss Doe's due process claims as he has failed to identify either a protected

---

[6] In response to defendants' motion to dismiss Doe's breach of contract claim, Doe acknowledged that his claim was untenable on other grounds but nonetheless requested leave to amend his complaint "to address the University's contractual breaches within the scope of his procedural due process claim." (Dkt. No. 32, at 23.) Having adopted the holdings of *Washington & Lee* and *Marymount*, the court finds that such an amendment would be futile to the extent Doe seeks merely to reassert his implied contract theory in the context of due process. Because there is no motion to amend before the court, the court will decline to rule on any other possible amendment at this time.

property or liberty interest. Consequently, the court need not reach the questions of qualified immunity or the sufficiency of Doe's allegations against each of the individual defendants.

### 2. Title IX

Doe brings his Title IX claim only against Virginia Tech. Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a). In *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), the Second Circuit identified two theories by which a student may assert a Title IX claim attacking a school's disciplinary proceeding: the "erroneous outcome" and "selective enforcement" theories. Here, Doe asserts an "erroneous outcome" claim, arguing that the defects in Virginia Tech's disciplinary process are motivated by gender bias. *E.g. Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 764 (D. Md. 2015).

As the *Salisbury University* court explained:

> To assess whether a school's disciplinary proceedings produced an erroneous outcome in violation of Title IX, courts typically apply a framework first introduced in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). *See, e.g., Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 638–41 (6th Cir. 2003) (citing favorably to *Yusuf* ); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961–62 (4th Cir. 1997) (same), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999); *Doe v. Washington & Lee Univ.*, No. 6:14–CV–00052, 2015 WL 4647996, at *9–10 (W.D. Va. Aug. 5, 2015) (same). In an erroneous outcome case, "the claim is that the plaintiff was innocent and wrongly found to have committed an offense" on the basis of gender bias. *Yusuf*, 35 F.3d at 715.
>
> To state a claim for erroneous outcome discrimination, a plaintiff must allege (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* To satisfy

> the third element, a plaintiff must do more than merely rely on "a conclusory allegation of gender discrimination . . . ."*Id.* Sufficiently particularized allegations of gender discrimination "might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*

*Salisbury Univ.*, 123 F. Supp. 3d at 765–66.

Defendant Virginia Tech has not disputed that Doe has alleged an adverse or erroneous result of the disciplinary process. Doe alleges that Roe's accusations were false and that the decision to impose a sanction against him was erroneous. He further alleges that his sanction resulted from a flawed hearing in which the hearing officers considered evidence from an investigation that was biased against him and in which he was "prevented from presenting evidence that supported both his defense and his allegations against Roe." (Compl. ¶ 83.)

Defendant instead contends that Doe has failed to allege gender bias or a causal connection between the allegedly erroneous outcome and gender bias. It argues that Doe's complaint relies on only conclusory allegations and allegations about federal political pressure to invest in sexual assault cases. Defendant is correct that many of Doe's allegations are conclusory or indicate a bias in favor of complainants regardless of their gender. However, Doe goes beyond merely conclusory allegations and highlights the differences in treatment he received both as the subject of an investigation and as a complainant.

For example, Doe alleged that when he attempted to bring charges against Roe, defendants did not accept his informal complaints "even though it is both University and Title IX policy that a complaint is to be investigated no matter the form in which it is delivered." (*Id.* ¶ 80.) Doe's complaint also describes the roadblocks he encountered during his pursuit of charges against Roe while noting that Polidoro "went out of her way to help Roe through the

14

process."  (*Id.* ¶¶ 79–82.)   In contrast to Roe, who received advice and was encouraged to file a complaint, nobody from the Title IX or student conduct office met with Doe to help him file a complaint or discuss his rights or options under the Title IX process.   (*Id.* ¶¶ 78–79.)

Additionally, Doe was treated differently than Roe throughout their investigations and hearings.   While Doe received a "no-contact" order prohibiting him from contacting Roe, defendants did not issue the same order to Roe in response to Doe's allegations.   (*Id.* ¶ 84.) Doe was also prevented from presenting evidence that supported his position in both cases, including evidence that the criminal charges against him had been dropped.   (*Id.* ¶ 83.) Moreover, Doe alleges that although the evidence showed he engaged in verbal altercations with Roe, the evidence against Roe—including her own admission—indicated that she physically assaulted, threatened, and manipulated Doe.   (*Id.* ¶¶ 72, 76.)   Yet, Roe was found responsible for the lesser charge of dating violence and was sanctioned only with probation.

As Virginia Tech points out, some of these facts may very well have resulted from the different charges against Doe and Roe—if dating violence is a lesser charge than domestic violence, Roe understandably received a less severe sanction.   However, the allegations indicate that Roe engaged in similar if not more egregious behavior than Doe, while Doe received disproportionate charges and sanctions.   Given these differences in treatment, a reasonable fact finder could plausibly determine that Doe was wrongly found responsible for domestic violence and that the finding was motivated by gender bias.

### 3. Declaratory Judgment

Finally, Doe seeks a declaratory judgment stating that Virginia Tech, and others, violated his rights, that its actions were motived "purely by gender," and that he was unjustly sanctioned.

15

Defendants correctly point out that declaratory judgment is a right of action, not a remedy, and thus is appropriate only when it will clarify and settle the legal relationship of the parties. *See Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). It "allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings," *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998), and is not appropriate if the questionable conduct has already occurred, *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *3 (W.D. Va. Feb. 19, 2014).

Doe does not request clarification of his rights to avoid future litigation, but requests relief for a past wrong—his suspension from Virginia Tech.[7] Because this request will not "assist in guiding the parties' future conduct," *id.*, Doe has failed to state a claim for declaratory relief.

### III. CONCLUSION

For the reasons set forth above, the court will grant in part and deny in part defendants' motions to dismiss. Specifically, the court will grant defendants' motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 15) with respect to Counts One, Two, Four, and Five against Virginia Tech. It will further grant the motion to dismiss for lack of subject matter jurisdiction with respect to Counts One and Two to the extent Doe seeks monetary damages against the individual defendants in their official capacities. The court will also grant defendants' motion to dismiss pursuant to Rule 12(b)(6) (Dkt. No. 17) with respect to the remaining claims in Counts

---

[7] To be clear, Doe requests prospective injunctive relief as a remedy for the other claims included in his complaint. However, he requests a declaration that "(a) the University violated Doe's due process rights and its actions were motivated purely by gender, and (b) Doe was unjustly sanctioned by Virginia Tech." (Compl. 22.) Unlike his prospective requests to rescind the sanctions and expunge his records, both portions of the requested declaration are retrospective and would merely address the wrongs already committed.

One and Two against the individual defendants in both their individual and official capacities, and with respect to Count Six against all defendants. An appropriate order will be entered.

Entered: March 19, 2020.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge