IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JACOB DOE,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:19–cv–249 |
| | ) By: Robert S. Ballou |
| **VIRGINIA POLYTECHNIC** | ) United States Magistrate Judge |
| **INSTITUTE AND STATE** | ) |
| **UNIVERSITY,** *et al.*, | ) |
| Defendants. | ) |

## **OPINION**

This action arises from a student misconduct proceeding in which Virginia Polytechnic Institute and State University ("Virginia Tech") suspended Plaintiff Jacob Doe ("Doe") for sexual misconduct involving another student. Defendants seek a protective order to preclude discovery beyond the record of the investigation and student misconduct proceedings. Dkt. 52. Defendants have not presently carried their burden of showing the necessity of a protective order. Therefore, I **DENY** Defendants' motion. I nevertheless remind the parties that future discovery requests are to be carefully crafted and should promote the fundamental objectives of speedy, fair, and efficient litigation. See Fed. R. Civ. P. 1.

**I.     Background**

Doe was a student at Virginia Tech in 2017 when his then girlfriend, Jenna Roe, accused him of misconduct. Virginia Tech investigated the allegations and placed seven disciplinary charges against Doe, including three relating to sexual assault. Dkt. 1, ¶¶ 14–18, 28. Virginia Tech held a disciplinary misconduct hearing and found Doe responsible for domestic violence, suspended him from the University for 1.5 years, and required that he attend certain counseling

sessions and mental health programs before he could apply for readmission. Id. at ¶¶ 41–42. Doe appealed his conviction and suspension, but the appeal was denied. Id. at ¶ 50. This action followed. The only remaining claim is Count III, which alleges that defects in the disciplinary process were grounded in gender bias in violation of Title IX. Dkt. 47.

## II.     Standard

Discovery is "broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (internal citations omitted). However, "the court 'must limit the frequency or extent of discovery otherwise allowed by these rules' if it determines that 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]' or that 'the proposed discovery is outside the scope permitted by Rule 26(b)(1).'" Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 211 (W.D. Va. 2016) (quoting Fed. R. Civ. P. 26(b)(2)(C)).

A party seeking a protective order must prove that good cause exists to prevent or limit discovery through a particularized showing of why discovery should be denied. Conclusory or generalized statements in a motion for a protective order fail, as a matter of law, to satisfy this burden. See Smith v. United Salt Corp., No. 1:08–CV–00053, 2009 WL 2929343, at *5 (W.D. Va. Sept. 9, 2009). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988). The district court, however, is afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### III. Analysis

Generally, Doe alleges an erroneous outcome claim under Title IX arguing that defects in the disciplinary process are motivated by gender bias. To prevail under an erroneous outcome theory of gender bias, a plaintiff must show (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal connection between the flawed outcome and the gender bias. Doe v. Marymount Univ., 297 F. Supp. 3d 573, 583–85 (E.D. Va. 2018) (citing Doe v. Miami Univ., et al., 882 F.3d 579, 592 (6th Cir. 2018)). Thus, the issue before me is whether Defendants have shown good cause to justify a protective order not to permit discovery beyond the student conduct record of Plaintiff's claims of actual innocence.

Courts in this circuit have relied upon the holding in Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994), when evaluating similar Title IX claims. See, e.g., Owen v. Liberty Univ., No. 6:19–CV–00007, 2020 WL 1856798, at *4 (W.D. Va. Apr. 13, 2020); Doe 2 by & through Doe 1 v. Fairfax Cty. Sch. Bd., 384 F. Supp. 3d 598, 606–07 (E.D. Va. 2019). In Yusuf, the Second Circuit held

> Plaintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail. We do not believe that Congress meant Title IX to impair the independence of universities in disciplining students against whom the evidence of an offense, after a fair hearing, is overwhelming, absent a claim of selective enforcement. However, the pleading burden in this regard is not heavy. For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge. A complaint may also allege particular procedural flaws affecting the proof.

35 F.3d at 715. Defendants assert that the holding in Yusuf restricts the inquiry in erroneous outcome claims solely to "the record before the disciplinary tribunal." Id.; Dkt. 53. Thus,

3

Defendants contend that discovery beyond the record of the disciplinary proceedings regarding the accuracy of the decision has, at most, only marginal value. Dkt. 61.

At this stage, Doe has not served interrogatories or document requests on Defendants and the parties have not taken any depositions. Thus, it is unclear at present the extent Doe intends to solicit evidence beyond the record of the evidentiary proceedings. To be clear, however, Doe intends to offer evidence beyond the disciplinary record to prove his actual innocence. See Dkt. 54, p. 7 ("Doe intends to offer evidence that he was innocent . . . While the hearing record might be a starting point for this inquiry, it is hardly the whole kit and caboodle."). Defendants' expectations of the broad nature of the expected discovery requests may be reasonably well founded. However, I am reluctant to grant a protective order where the Doe has not yet made such a request. See Williams v. Baltimore Cty. Gov't, No. CV JKB–17–0066, 2017 WL 5593173, at *1 (D. Md. 25 Apr. 2017) (denying as premature motion for protective order filed before discovery had occurred), appeal dismissed, 696 Fed. App'x 105 (4th Cir. 2017). Further, Defendants' broad request that I foreclose the discovery of evidence of Doe's claim of actual innocence that does not already exist in the student conduct record compounds my concerns of having to consider a wide variety of theoretical discovery requests which Doe may never make.

Doe's complaint suggests that evidence outside the disciplinary record exists which may create articulable doubt on whether Doe was erroneously found responsible of domestic violence. In fact, the presiding district judge recounted these allegations in her opinion overruling the motion to dismiss Count III. See Dkt. 46. Other courts have similarly overruled motions to dismiss where the complaint alleges facts outside the disciplinary record to support the element that an articulable doubt exists as to the outcome of the proceeding. See Doe v. Marymount Univ., 297 F. Supp. 3d at 584–85 (discussing allegations that significant facts were

4

not brought to the attention of the adjudicator or otherwise ignored); Doe v. Columbia Coll. Chicago, 299 F. Supp. 3d 939, 954 (N.D. Ill. 2017) (considering plaintiff's complaints that college excluded evidence of toxicology reports).

The Yusuf court did not address the discovery issue before me of whether an aggrieved student can discover facts outside the student conduct record. The Yusuf court's finding that the plaintiff's claim failed based upon the evidence before the tribunal does not mean that other evidence outside the student conduct record is irrelevant and non-discoverable. In fact, the Yusuf court suggested that certain statements, "such as statements reflecting bias by members of the tribunal, may suffice both to cast doubt on the accuracy of the disciplinary adjudication and to relate the error to gender bias." 35 F.3d at 715. See, e.g., Doe v. Ohio State Univ., No. 2:16–cv–171, 2018 WL 4958958 (S.D. Ohio Oct. 15, 2018) (considering discovery outside the administrative record, including other student case files); Doe v. Columbia Coll. Chicago, 299 F. Supp. 3d at 954–55. The court's mere finding that a claim fails without evidence of doubt based on the record before the tribunal does not render outright irrelevant and non-discoverable further evidence of doubt from outside the record. It may well be that other information beyond the student conduct record is relevant to whether there exists "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" or "other reason to doubt the veracity of the charge." Yusuf, 35 F.3d at 715. Thus, I find Defendants' reliance on Yusuf misplaced.

Further, recent circuit court decisions seem to question Yusuf's strict categorization of Title IX claims as either erroneous outcome or selective enforcement causes of action. In Doe v. Purdue Univ., the Seventh Circuit rejected approaching Title IX violations through Yusuf's categorical model.

5

> We see no need to superimpose doctrinal tests on the statute. All of these categories simply describe ways in which a plaintiff might show that sex was a motivating factor in a university's decision to discipline a student. We prefer to ask the question more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against John "on the basis of sex"?

928 F.3d 652, 667–68 (7th Cir. 2019). The Third Circuit reached the same conclusion in Doe v. Univ. of the Sciences, 961 F.3d 203, 209–11 (3d Cir. 2020) (rejecting Yusuf's "doctrinal framework" "in favor of "the Seventh Circuit's straightforward pleading standard").[1] See also Schwake v. Arizona Bd. of Regents, No. 18–15725, 2020 WL 4343730, at *5 (9th Cir. July 29, 2020) (adopting the Seventh Circuit's approach). But see Doe v. Oberlin Coll., No. 19–3342, 2020 WL 3495298 (6th. Cir. June 29, 2020) (applying erroneous outcome framework). Further, the presiding judge has relied on Yusuf in similar cases, but has questioned whether the court in Yusuf would have reached the same result in light of subsequent development of the case law. See, e.g., Case no. 7:18-cv-320, Dkt. 70, p. 35. Thus, the question that ultimately may drive this litigation is, as discussed in Doe v. Univ. of the Sciences, whether the alleged facts, if true, raise a plausible inference that the university discriminated against Jacob Doe "on the basis of sex"? 961 F.3d at 209.

Nonetheless, Plaintiff's claim is presently postured as an erroneous outcome claim, which requires that Doe allege both particular facts sufficient to cast articulable doubt on the accuracy of the outcome of the disciplinary proceeding and "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Yusuf, 35 F.3d at 715; see Doe v. Brown Univ., 166 F. Supp. 3d 177, 185 (D.R.I. 2016) (applying Yusuf in this manner).

The court has wide discretion to control the course of litigation, including the authority to control the scope and pace of discovery. See Herbert v. Lando, 441 U.S. 153, 177 (1979); In re

---

[1] Due to the evolving nature of the caselaw on this issue, I do not find that Plaintiff is foreclosed from arguing that a broader framework than allowed in Yusuf exists for establishing Title IX violations.

Ramu Corp., 903 F.2d 312 (1990); See, e.g., Buffington v. Baltimore Cty., Md., 913 F.2d 113, 133 n.15 (4th Cir. 1990). The parties are reminded that Rule 1 imposes an affirmative duty on both the court and the parties "to secure the just, speedy, and inexpensive determination" of a case. Fed. R. Civ. P. 1; see also Herbert, 441 U.S. at 177 (stating that Rule 26(b)(1) "should be firmly applied" and that "judges should not hesitate to exercise appropriate control over the discovery process"). Whatever discovery requests are made in this matter must be carefully crafted. Thus, as outlined above, all requests here must be tailored to acquire information relevant to the specific elements of an erroneous outcome claim as described in Yusuf.[2]

As Defendants' request for a protective order is premature, Defendants have not carried their burden of proving that good cause exists to restrict discovery. Therefore, I deny Defendant's motion but remind counsel and the parties of the fundamental objectives of speedy, fair, and efficient litigation. See Fed. R. Civ. P. 1.

**Conclusion**

For these reasons, I hold that Defendants have not presently shown good cause to justify the requested protective order. Therefore, I **DENY** Defendants' motion. However, Defendants shall maintain the right to object to future discovery requests.

It is so **ORDERED**.

Entered:  February 24, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[2] If discovery requests are not carefully crafted then Defendants shall, of course, have the opportunity to file any objections to Plaintiff's specific requests.