**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1971**

---

JACOB DOE,

Plaintiff − Appellant,

v.

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY; TIMOTHY DAVID SANDS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; FRANK SHUSHOK, JR., employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KATIE POLIDORO, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ENNIS MCCRERY, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KYLE ROSE, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ROHSAAN SETTLE, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; KELLY OAKS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally; ANGELA SIMMONS, employee of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,

Defendants – Appellees.

---

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Elizabeth Kay Dillon, District Judge. (7:19−cv−00249−EKD−RSB)

---

Argued: April 13, 2023 Decided: August 8, 2023

---

Before DIAZ, Chief Judge, and GREGORY and THACKER, Circuit Judges.

---

Affirmed by published opinion. Chief Judge Diaz wrote the opinion, in which Judge Gregory and Judge Thacker joined.

---

**ARGUED:** Benjamin Francis North, BINNALL LAW GROUP, PLLC, Alexandria, Virginia, for Appellant. Nathan Henry Schnetzler, FRITH, ANDERSON & PEAKE, PC, Roanoke, Virginia, for Appellees. **ON BRIEF:** Kay Heidbreder, University Legal Counsel and Senior Assistant Attorney General, M. Hudson McClanahan, Associate University Legal Counsel and Assistant Attorney General, Kristina J. Hartman, Associate University Legal Counsel and Assistant Attorney General, VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, Blacksburg, Virginia, for Appellees.

---

DIAZ, Chief Judge:

After receiving a long suspension, Jacob Doe sued Virginia Polytechnic Institute and State University ("Virginia Tech") and several university officials, alleging that Virginia Tech's Title IX investigation, hearing, and appeal process denied him due process of law. The district court dismissed Doe's complaint, holding that he hadn't alleged a cognizable liberty or property interest in his continuing education.

We affirm for a different reason—even assuming Doe has such an interest, he hasn't alleged that he was deprived of it without sufficient process.

I.

A.

For this appeal, we take as true the allegations in Doe's complaint.

Jacob Doe and Jenna Roe were students at Virginia Tech.[1] Doe broke up with Roe following an argument in December 2017. Roe then called the police and "falsely accused" Doe of assault and battery (for pulling out her earbuds during the altercation) and trespassing (for waiting in her apartment to collect his belongings and dropping off an apology letter). J.A. 23. The county prosecutor dropped the charges after learning Roe had physically assaulted Doe during their relationship.

[1] Both names are pseudonyms.

Virginia Tech opened a Title IX investigation into Doe and notified him via email.[2] The notice, however, didn't include "any information about the specific incidents, allegations, or possible violations of the Student Conduct Code being investigated." J.A. 30.

Katie Polidoro, then Virginia Tech's Deputy Title IX Coordinator, conducted a three-month investigation into Roe's allegations. During the investigation, Polidoro met at least four times with Roe and interviewed at least three of Roe's suggested witnesses, but she didn't interview any of the witnesses Doe said could refute Roe's claims.

Polidoro did meet twice with Doe, though she asked him "invasive and irrelevant" questions, including about "the quality of his sex life." J.A. 24. Doe told Polidoro that Roe, who has a black belt in martial arts, abused him. He also emailed Polidoro an account of how Roe physically attacked him while he was sleeping and hit him in front of his roommate.

Doe received a copy of Polidoro's Investigation Report in March 2018. The report didn't include "the exact allegations" or charges being brought against Doe, and it didn't mention his allegations of abuse by Roe. J.A. 25. And Doe didn't attach the report or the earlier notice of investigation to his complaint.

---

[2] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Universities face liability under Title IX when they act with deliberate indifference to student-on-student harassment. *See S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 76–77 (4th Cir. 2016).

Five days later, Doe learned that he was facing seven charges (including three related to sexual assault). His hearing was scheduled for one week after that. But then Doe's mother asked Virginia Tech officials why they weren't also investigating Roe's conduct, and they told her that Doe would first need to file a formal complaint. When Doe did that, his hearing was postponed. Virginia Tech conducted a "superficial investigation" into Doe's allegations against Roe—during which "Polidoro was finally forced to interview Doe's witnesses"—and issued an investigative report one month later. J.A. 26.

Nearly two months after Doe learned the specific charges against him, Virginia Tech's Office of Student Conduct held a combined hearing on both Doe and Roe's conduct. Roe's attorney told Doe before the hearing that Doe's presence there might violate a previously issued protective order. In response, a university official suggested that neither Roe nor Doe attend, but both ultimately did.

We know very little about what happened at the hearing. Doe's complaint states that Roe alleged, for the first time, "that he prevented her from spending time with friends and family" during their relationship. J.A. 29. It also says Roe "admitted" to engaging in physical violence against him. J.A. 28. But the complaint doesn't say how that information was introduced. Doe's witnesses weren't available for the hearing because of study-abroad programs, summer travel, and jobs. There's no information in the complaint on whether Roe's witnesses attended.

Two days after the hearing, Virginia Tech found Doe responsible for domestic violence and suspended him for one and a half years. Roe was found responsible for dating

violence and received probation. The university's written decision "relied heavily" on the interviews of Roe's corroborating witnesses. J.A. 27.

Doe claims the written decision (which isn't in the record) "failed to note that none of Doe's witnesses were ever interviewed." J.A. 27. But elsewhere in the complaint, Doe says that Polidoro interviewed his witnesses when he filed his formal complaint against Roe. J.A. 26. Doe's witnesses didn't testify at the hearing, but we don't know if the substance of their interviews was presented.

Virginia Tech placed a notice of suspension on Doe's transcript and required him to undergo a mental-health assessment, attend counseling sessions, and participate in educational programs, including on anger management.

Doe appealed, asserting that the hearing officers were biased, that they used the wrong standard of proof, and that he didn't receive proper notice of the allegations against him. Virginia Tech's Assistant Vice President for Student Affairs, Angela Simmons, adjudicated Doe's appeal.

Simmons rejected Doe's claim of insufficient notice because he was told the charges against him before his hearing. And she refused to consider the evidence Doe offered to refute Roe's allegations that he prevented her from seeing friends and family, finding it "new information" not properly considered on appeal. J.A. 29. Simmons upheld the findings and sanctions against Doe.

B.

Doe sued Virginia Tech and several university officials, alleging gender-based discrimination in violation of Title IX, violations of his due-process rights under the United

Case 7:19-cv-00249-EKD-RSB Document 104 Filed 08/08/23 Page 7 of 17 Pageid#: 2737

States and Virginia constitutions, and state-law claims including breach of contract. He sought (1) compensatory and punitive damages, including for lost earnings, increased education costs, and reimbursement for mental-health counseling; (2) a permanent injunction preventing Virginia Tech from enforcing any punishment against him and ordering it to expunge his record; and (3) a declaration stating that Virginia Tech violated Doe's due process rights, took disciplinary action based "purely" on his gender, and sanctioned him unjustly. J.A. 41.

The defendants moved to dismiss based on sovereign immunity and for failure to state a claim. The district court dismissed all but one of Doe's claims against Virginia Tech, holding it wasn't a proper defendant under 42 U.S.C. § 1983 and was entitled to Eleventh Amendment immunity. *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 19-CV-00249, 2020 WL 1309461, at *3–4 (W.D. Va. Mar. 19, 2020).[3] The court likewise held the university officials couldn't be sued for damages in their official capacities. *Id.* at *3. But it concluded it had jurisdiction over Doe's injunctive claims against the officials and his claims for damages against the officials in their individual capacities. *Id.* at *4. Doe doesn't contest these jurisdictional holdings.

The district court then considered whether Doe's allegations stated a claim against the university officials. The officials argued that (1) Doe failed to allege a cognizable

[3] The district court let Doe's Title IX claim proceed because Virginia Tech waived its immunity for Title IX claims by accepting Title IX funds. *Id.* at *3 n.3. But the court later granted summary judgment for Virginia Tech on that claim, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 19-CV-00249, 2022 WL 3334501, at *12 (W.D. Va. Aug. 11, 2022), and Doe doesn't appeal that decision.

liberty or property interest in his continuing education; (2) even if he had, he received all the process he was due; and (3) even if the court found a constitutional violation, the officials were entitled to qualified immunity. *Id.* Finally, they argued that Doe's claims against certain officials failed because of their limited role in his Title IX proceedings. *Id.*

The district court agreed that Doe hadn't alleged a cognizable liberty or property interest and dismissed his state and federal due-process claims. It held that "a public university student does not have a protected *liberty* interest in his continuing education." *Id.* at *5 (emphasis added). And while the court allowed that in some cases a student in Doe's position might have a *property* interest in their education, it found Doe hadn't pleaded one. *Id.* at *6. It emphasized that Doe hadn't alleged that Virginia Tech had a policy of suspending students only for cause, which might have created a "legitimate claim of entitlement" to his continued enrollment. *Id.*[4]

Because the district court concluded that Doe hadn't alleged a cognizable liberty or property interest, it didn't address the officials' alternative arguments: that Doe received sufficient process, that they were entitled to qualified immunity, and that some of their roles in his suspension were too minimal to sustain a claim. *Id.* at *7.

This appeal followed.

---

[4] Doe also argued he had a property right based in an implied contract under which Virginia Tech had a "duty not to suspend or expel [him] for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith." *Id.* The district court rejected that property-right theory too, *id.* at *6–7, and Doe doesn't challenge that ruling, *see* Appellant's Br. at 22 n.6.

II.

We review the district court's dismissal for failure to state a claim de novo. *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021). We accept the well-pled allegations in the complaint as true and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022). But we needn't accept "legal conclusions couched as facts or unwarranted inferences." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (cleaned up).

We agree with the district court that Doe's allegations aren't enough to state a claim, but for a different reason. The district court held that Doe hadn't alleged a cognizable liberty or property interest in his continuing education. We assume (without deciding) that Doe has such an interest. But we affirm because Doe hasn't alleged that he was deprived of that interest without sufficient process.[5]

A.

Doe argues Virginia Tech officials violated his procedural due-process rights under the Fourteenth Amendment and the analogous provision of Virginia's constitution. To plead a viable claim under either, Doe must allege: (1) that he had a "constitutionally cognizable life, liberty, or property interest"; (2) that he was deprived of that interest by

[5] We've long followed this approach in cases involving due-process claims brought by university students. *See Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021). The sufficiency-of-process issue is fully briefed, and we may affirm on any ground supported by the record. *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016).

"some form of state action"; and (3) "that the procedures employed were constitutionally inadequate." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (cleaned up); *see also Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (Va. 2005) ("[T]he due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution.").

The fundamental requirements of due process are "notice and an opportunity to be heard." *E.g.*, *Mallette v. Arlington Cnty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996). But our inquiry about the process due is flexible and depends on context. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). We evaluate whether a given process is constitutionally sufficient by balancing:

> (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021) (quoting *id.* at 335)).

In cases involving suspension or expulsion from colleges and universities, we have drawn on the Fifth Circuit's decision in *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 159 (5th Cir. 1961). *See, e.g.*, *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983).

*Dixon* explains that a student facing discipline should receive notice "contain[ing] a statement of the specific charges and grounds which, if proven, would justify [disciplinary action]." 294 F.2d at 158. In cases involving student misconduct, the best

approach is to hold "a hearing which gives [university officials] an opportunity to hear both sides in considerable detail." *Id.* at 158–59. When the accused student isn't present at the hearing, he "should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies." *See id.* at 159; *see also Nash v. Auburn Univ.*, 812 F.2d 655, 663 (11th Cir. 1987). And he should "be given the opportunity to present . . . his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf." *Dixon*, 294 F.2d at 159.

With *Dixon* firmly in mind, we turn to Doe's allegations.

B.

Doe argues he received insufficient process because (1) Virginia Tech officials didn't inform him of the specific charges against him before starting their investigation, (2) he wasn't able to present testimony from supporting witnesses at the hearing, and (3) the university official who heard his appeal didn't consider the new evidence he offered to rebut Roe's claim that he isolated her from friends and family.

We're not persuaded.

1.

Doe first contends that he didn't receive notice of the charges or specific allegations against him before the university's investigation, and so was "unable to adequately respond to the charges against him." J.A. 30.

Assuming Doe has a cognizable interest in his continued enrollment, Virginia Tech's investigation didn't deprive him of that interest. Had Virginia Tech suspended Doe at the close of Polidoro's investigation (with no further opportunity for Doe to be heard),

we might face a different case. But as alleged, the investigation report merely described the evidence against Doe. It wasn't accompanied by any sanction. *Cf. Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) (finding no deprivation where an investigatory panel's power was limited to recommending expulsion of students).

Doe remained on campus and attended classes during the nearly two months between the end of the investigation and the date of his hearing. He was found responsible for domestic violence and suspended only after he saw the university's report, received notice of the charges against him, and had a hearing where he was given an opportunity to respond.

Doe's reliance on *Doe v. Rector & Visitors of George Mason University*, 149 F. Supp. 3d 602 (E.D. Va. 2016), is misplaced. There, the plaintiff (1) was told repeatedly that George Mason University was investigating a single instance of alleged misconduct, and (2) was found not responsible at a hearing limited to that incident. *Id.* at 615–18.

But when the complainant appealed, the university found the plaintiff responsible for sexual assault based on conduct that occurred on other dates, for which the plaintiff didn't receive notice. *Id.* at 617, 622. The court concluded that this lack of notice deprived the plaintiff of a meaningful opportunity to be heard because he was "unaware of the factual bases on which he [could] be found responsible for a misconduct violation." *Id.* at 618.

Doe argues *George Mason* "held that an accused student is entitled to notice of the 'specific charges' against him." Appellant's Br. at 30. We agree, but only so far as the court concluded that "[f]ailure to provide clear and specific notice *at any point* that might

allow for a meaningful defense is constitutionally insufficient to provide due process." *George Mason*, 149 F. Supp. 3d at 618 (emphasis added).

That didn't happen here—Doe received notice of the charges against him nearly two months before his hearing. And *George Mason* was clear on the limits of its holding, explaining, "nothing in this decision should be construed as imposing a rigid requirement of meticulously detailed notice at the outset of a disciplinary proceeding." *Id.* So that case doesn't require pre-investigation notice of the charges, and Doe cites no other case that does.

Doe also suggests that Virginia Tech could have provided pre-investigation notice of the charges because a Title IX regulation now requires it to do so in sexual-harassment cases. Reply Br. at 7 (citing 34 C.F.R. § 106.45(b)(2) (2023)).[6] But Doe misstates our inquiry.

Our charge is to balance Doe's interest in his continuing education with Virginia Tech's interest in providing a safe campus community, where allegations of misconduct can be timely investigated and charged—or not—as appropriate. And that Virginia Tech *can* provide pre-investigation notice doesn't tell us what it would cost the university to do so in terms of administrative burden and the impact on other students' interests. *See Mathews*, 424 U.S. at 335. Doe's argument also overlooks the remaining *Mathews* factor:

---

[6] That regulation was adopted in 2020, so it didn't apply to Doe's disciplinary proceedings.

"the risk of an erroneous deprivation of [Doe's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.*

The procedures Virginia Tech employed before imposing any sanctions mitigated the risk that Doe would be erroneously suspended, such that pre-investigation notice would have provided minimal incremental value. So University officials didn't violate Doe's constitutional rights by investigating Roe's allegations before deciding on charges.

2.

Doe next contends that Virginia Tech violated his due process rights when it failed to interview his witnesses during its investigation of Roe's allegations. That's not right.

As we've said, Virginia Tech didn't sanction Doe until after the hearing. And we've never held that a university has an obligation to present exculpatory evidence on behalf of an accused student.

Doe also complains that his witnesses couldn't appear in person at the hearing because it was held during the summer. But he doesn't allege that the witnesses weren't able to provide testimony by phone, video, or in writing. Nor does Doe claim he sought to continue the hearing until his witnesses were available. And Doe admits that Polidoro interviewed his witnesses during her investigation into Roe, and the allegations against Roe were adjudicated at the same hearing.

So these allegations too don't rise to the level of a due-process violation.

3.

Finally, Doe argues that he was denied an opportunity to challenge Roe's credibility when she brought up a new allegation at the hearing: that he prevented her from seeing

friends and family. Doe points out that the Fifth Circuit recently modified *Dixon* to hold that "due process in the university disciplinary setting requires some opportunity for real-time cross-examination." *See Walsh v. Hodge*, 975 F.3d 475, 485 (5th Cir. 2020) (cleaned up). And he argues that "[i]f the right to question one's accuser requires live cross-examination, it certainly requires . . . the simple ability to submit impeachment evidence." Appellant's Br. at 32. We reject Doe's argument.

First, courts are divided on whether due process requires cross-examination in university disciplinary proceedings. *See Walsh*, 975 F.3d at 487 & n.54 (discussing circuit split). And we've never held that cross-examination is required. *See Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370, at *2 (4th Cir. June 12, 2023).

But even assuming that Doe should have been able to cross-examine Roe and present impeachment evidence at the hearing, his complaint doesn't allege that Virginia Tech officials prevented him from doing so. The complaint lacks details on what occurred at the hearing and doesn't say if Doe testified or had an opportunity to cross-examine Roe. Doe is entitled to reasonable inferences drawn from the facts in the complaint, but we won't infer a due-process violation from his silence.

Doe suggests that Virginia Tech officials should have allowed him to rebut Roe's new allegation when they considered his appeal, and that they deprived him of an opportunity to be heard by refusing to consider the "new information" he offered. Appellant's Br. at 31; J.A. 29 & n.4 (describing the evidence as "outlin[ing] the various trips, get-togethers, and vacations, both in and out of the state that Doe and Roe attended with each other's families"). But it's not clear why Doe couldn't have offered this same

information at the hearing. And while Doe may have been caught off guard by Roe's testimony, the complaint doesn't allege that he objected to the new evidence or asked to continue the proceedings.

There's a difference between having notice of the charges and having notice of the evidence that supports those charges. In the criminal context, for example, the Supreme Court has explained that "[a] defendant's right to notice of the charges against which he must defend is well established. But a defendant's claim that he has a right to notice of the evidence that the state plans to use to prove the charges stands on quite a different footing." *Gray v. Netherland*, 518 U.S. 152, 167–68 (1996) (cleaned up).

*Dixon* could be read as requiring notice of the evidence to be presented in university disciplinary proceedings. *See* 294 F.2d at 159 ("[T]he student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies."). Some courts, including one in our circuit, have interpreted *Dixon* in this way. *See Emanuelson v. Univ. of N.C. at Greensboro*, No. 17CV534, 2018 WL 1779342, at *8–9 (M.D.N.C. Apr. 12, 2018) (holding that a plaintiff who alleged he wasn't "provided a comprehensive list of the evidence to be used against him in advance of the hearing" plausibly pleaded a due-process violation), *recommendation adopted*, No. 17CV534, 2018 WL 11421422 (M.D.N.C. July 24, 2018); *see also Marin v. Univ. of P.R.*, 377 F. Supp. 613, 623 (D.P.R. 1973).

But the Eleventh Circuit has clarified[7] that *Dixon* only requires notice of adverse witnesses and a report of their testimony where "university students [aren't] present to hear the evidence against them." *Nash*, 812 F.2d at 663. Such notice "ensure[s] the students' ability to respond at a later forum." *Id.* But "when the opposing witnesses will testify in the presence of the accused," *Dixon* doesn't require advance notice of that testimony. *Id.* at 662–63.

Perhaps in some future case, the evidence at a hearing might be of such character or consequence to merit advance notice. But that's not this case. To find that Doe alleged a due-process violation on this sparse record, we'd have to hold that university students have a right—in effectively every disciplinary hearing—to advance notice of the evidence to be presented against them. The ask is even more striking here because Doe doesn't allege that he sought a continuance or that Virginia Tech relied on the surprise testimony.

We reject Doe's claim of error.

III.

For the reasons given, we affirm the district court's judgment.

*AFFIRMED*

---

[7] On October 1, 1981, "the [old] Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.'" *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981). Decisions of the "old Fifth," "as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, [are] binding as precedent in the Eleventh Circuit." *Id.*